**APPLEBY et al.**
v.
**UNITED STATES.**
No. 50155.

United States Court of Claims.
Nov. 3, 1953.

See also 116 F.Supp. 415, 418.

John B. Coman, New York City, for plaintiffs.

J. W. Hussey, Washington, D. C., with whom was H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

The plaintiffs in this suit seek to recover $4,777.67, plus interest, alleged overpayment of joint individual income tax for the calendar year 1944 occasioned by the carry-back of a net operating loss incurred in 1946. The fact of plaintiffs' loss in 1946 is not contested; the issue presented is whether the particular loss claimed as a "carry-back" was "attributable to the operation of a trade or business regularly carried on by the taxpayer" and allowable as a carry-back under Sections 23(s) and 122 of the Internal Revenue Code.[1]

Plaintiffs,[2] residents of New York City, filed a joint income tax return for the calendar year 1944 and paid a total tax of $24,830.86 assessed against them. Their return for the calendar year 1946, filed March 14, 1947, showed an aggregate net loss of $8,199.18 and no tax due. A timely claim for refund for 1944 in the amount of $4,777.67 was filed in July 1947, asserting that the 1946 loss was a net operating loss and represented an allowable carry-back deduction in 1944 with a resultant income tax overpayment for that year in the amount claimed. This claim for refund was disallowed by the Commissioner of Internal Revenue on November 28, 1950.

In 1946 the plaintiff owned interests varying from 25 to 100 percent in numerous, extensive, and valuable parcels of real property located principally in New York City, with a total approximate value of $6,500,000.[3] While there were co-owners to several of the parcels, plaintiff and his brother, Edgar T. Appleby, took full and active charge of this real estate and personally managed all phases of the operation of the properties. Plaintiff devoted from 75 to 80 percent of his time to these activities.

Substantially all of the interests held by plaintiff and his brother in the realty referred to above were inherited from their father, who died in 1936. These properties were retained by or for the plaintiff and other members of the Appleby family for the primary purpose of obtaining rental income therefrom. Plaintiff was not engaged in the business of buying and selling real estate. Only occasional sales of any of the properties were made during the period from 1936 to 1946, inclusive, and these were made only when the parcels involved became unprofitable to operate, and their disposal was felt necessary as a part of prudent management of the business.

The operation and management of these properties over the years of ownership by the plaintiff and his brother included making repairs to buildings, rehabilitating properties, renovating buildings, the collection of rents ($360,-000 in 1946), and payment of taxes. In the performance of their work they maintained an office and employed secretarial help. In only two instances were agents employed to collect rents, and the amounts so collected represented less than one percent of the gross income.

During 1946 four parcels in which plaintiff had an interest were sold with the resulting aggregate net loss to him of $72,015.06. This loss was reported in the income tax return for 1946 under Schedule D–2 as a net loss from the sale

---

1. 26 U.S.C. §§ 23(s) and 122; 53 Stat. 867, amended 56 Stat. 798.

2. The plaintiffs are husband and wife and at all times here relevant filed joint income tax returns. For convenience, Francis S. Appleby will be referred to as plaintiff.

3. Details of this property and plaintiff's interest therein are set out in findings 5, 6, 7, 8, and 9.

or exchange of property other than capital assets. A gain of $6,264.34 in the sale of capital assets was also reported, 50 percent ($3,132.17) of which was taken into account along with the foregoing loss in computing the income reported on plaintiff's 1946 return.

The parcels sold in 1946 were disposed of because they had become unprofitable to rent. Their sale did not result in the liquidation or termination of the plaintiff's business except to the extent that the properties sold were no longer available for rentals. While the funds received from the sales were not reinvested in realty, they provided funds for use in the business, including liquid assets to keep the remaining property in good condition.

It is plaintiff's contention that the loss resulting from the 1946 sales mentioned above was one which he is entitled to carryback to 1944 under Sections 23(s) and 122 of the Code.[4] So far as is here relevant, Section 23(s) provides that in computing net income there shall be allowed as a deduction a net operating loss deduction computed under Section 122.

The latter section defines a net operating loss as the excess of deductions over gross income with the limitations provided in subsection (d). The defendant urges that the limitations of subsection (d)(5) prohibits the carry-back for which plaintiff contends. It provides:

"Deductions otherwise allowed by law *not attributable to the operation of a trade or business regularly carried on by the taxpayer* shall * * be allowed only to the extent of the amount of the gross income not derived from such trade or business."
[Emphasis supplied.]

Plaintiff does not claim to have had sufficient non-business income to equal the deduction here claimed, and, unless the loss in question was attributable to his business, the defendant will prevail. While conceding that plaintiff regularly carried on the business of managing real estate for the production of rental income, the defendant argues that the operation of such a business does not ordinarily entail the *sale* of realty and therefore the limitation of Section 122 (d)(5) is applicable here. For the rea-

---

4. These sections provide in pertinent part, 26 U.S.C.1946 Ed., §§ 23, and 122:

"§ 23. Deductions from gross income.
"In computing net income there shall be allowed as deductions: * * *

"(s) *Net operating loss deduction.* For any taxable year beginning after December 31, 1939, the net operating loss deduction computed under section 122."

"§ 122. Net operating loss deduction

"(a) As used in this section, the term 'net operating loss' means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d).

"(b) *Amount of carry-back and carry-over.*

"(1) *Net operating loss carry-back.* If for any taxable year beginning after December 31, 1941, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years * * *.

"(c) *Amount of net operating loss deduction.* The amount of the net operating loss deduction shall be the aggregate of the net operating loss carryovers and of the net operating loss carrybacks to the taxable year reduced by the amount, if any, by which the net income (computed with the exceptions and limitations provided in subsection (d) (1), (2), (3), and 4)) exceeds, in the case of a taxpayer other than a corporation, the net income (computed without such deduction) * * *.

"(d) *Exceptions, additions, and limitations.* The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows: * * *

"(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. For the purposes of this paragraph deductions and gross income shall be computed with the exceptions, additions, and limitations specified in paragraphs (1) to (4) of this subsection. * * *"

sons which follow, we agree with defendant's position.

The difficulty of defining with precision just what transactions are contemplated in the italicized portion of the provision of Section 122(d) (5), quoted above, probably accounts for the lack of any statutory or regulatory attempt to do so. It is apparent, however, that the conclusion reached in such a determination will be influenced by the purpose for which the inquiry was undertaken. Some consideration of the legislative history and purpose of the "carry-over" and "carry-back" provisions of the Internal Revenue Code is therefore desirable.

The "net loss" concept has been a part of the Code, intermittently, since it was first added by the Revenue Act of 1918.[5] A provision with similar language was included in the Revenue Act of 1924,[6] and these remained a part of the revenue laws until their repeal by the National Industrial Recovery Act of 1933.[7] The provisions now under consideration, that is, Sections 23(s) and 122, were restored in 1939 with an amendment in 1942 which provided for the carrying back as well as the carrying forward of net operating loss.[8]

It is apparent from the cases involving the construction of the phrase "attributable to the operation of a trade or business regularly carried on by the taxpayer," that the courts have emphasized the word *operation* and have given it a somewhat restricted meaning. Thus in Dalton v. Bowers,[9] 287 U.S. 404, at page 408, 53 S.Ct. 205, at page 206, 77 L.Ed. 389, the Supreme Court quoted with approval the following language of the Circuit Court of Appeals, 2 Cir., 56 F.2d 16, 18:

> "By the statute [§ 206, Rev.Act 1924, 43 Stat. 253, 260], allowing the deductions and carrying over the loss for two years, Congress intended to give relief to persons engaged in an established business for losses incurred during a year of depression in order to equalize taxation in the two succeeding and more profitable years. *It was not intended to apply to occasional or isolated losses.*" [Emphasis supplied.]

The concept of the purpose and function of the net operating loss provision implicit in this statement, i. e., that it is designed to equalize taxation on business earnings which *normally* fluctuate sharply in the operation of certain enterprises, rather than to equalize all loss incidental to the management of all aspects of business enterprises, is clearly discernible in the Committee Reports which accompanied the restoration of a net operating loss provision to the Code in 1939. In commenting on the effect of the elimination of the net loss provisions by the National Industrial Recovery Act of 1933, supra, the House Committee on Ways and Means made the following comment:[10]

> "As a result of the elimination of this carry-over, a business with *alternating profits and loss* is required to pay higher taxes over a period of years than a business with stable profits, although the average income of the two firms is equal. New enterprises and the capital-goods industries are especially subject to *wide fluctuations in earnings.*

---

5. § 204(a), Revenue Act 1918, 40 Stat. 1060.

6. § 206, Revenue Act of 1924, 43 Stat. 260.

7. § 218, National Industrial Recovery Act of 1933, 48 Stat. 195, 209.

8. Note 1, supra. See generally, Raum, "Carry-Overs and Carry-Backs in Connection With the Liquidations or Sale of a Business," 49 Col.L.Rev. 49.

9. Plaintiff quite correctly points out certain distinguishable features between this and the instant case. This, however, does not invalidate the Court's interpretation of the purpose of "net loss" adjustments or its construction of the language employed.

10. H.Rept.No.855, 76th Cong., 1st Sess., p. 9.

It is, therefore, believed that the allowance of a net operating business loss carry-over will greatly aid business and stimulate new enterprises." [Emphasis supplied.]

This emphasis on the income fluctuations peculiar to the business cycles of certain enterprises or due to artificial stimulants and restrictions on the entire economy, was also of importance to Congress when consideration was given to the carrying back of net operating losses.

The Senate Committee on Finance stated, with reference to the carry-*back* provision added in 1942, "This provision affords, in effect, the same type of relief in periods of declining profits which the present 2-year carry-forward of operating losses and unused excess-profits credits affords in periods of increasing profits."[11]

■ In view of the purpose of the "net operating loss" deduction as indicated by the legislative history and judicial constructions of the provision, we are inclined to the view that to be exempt from the application of Section 122 (d)(5) a loss must be, not merely an incident to prudent management, but incurred in the *normal* day to day *operation* of the enterprise. This position is warranted by both the language and intent of the statute and is consistent with prior judicial pronouncements.

The conclusion indicated above is the underlying rationale of the position taken by the Commissioner of Internal Revenue, and the courts which have considered the question, that is, that a loss from the sale of property merely *used* in connection with a business, other than that of buying and selling such property, is not deductible under Section 122. In 1945 the Commissioner ruled that although a loss was sustained on the sale of property used in a taxpayer's business of managing and operating income-producing real estate, it was not "attributable to the operation of a trade or business regularly carried on" within

the purview of Section 122(d)(5), since the taxpayer was not a regular trader or dealer in real estate. I.T. 3711, Cum. Bull. 1945, p. 164. This reasoning has been followed by the courts in similar cases. Smith v. United States, D.C., 85 F.Supp. 838, affirmed 6 Cir., 180 F.2d 357; Chicago Title & Trust Co. v. United States, D.C., 111 F.Supp. 314. Likewise, losses from the sale of land used in connection with the business of farming has been held nondeductible. Lazier v. United States, 8 Cir., 170 F.2d 521, 9 A.L.R.2d 324; Sic v. Commissioner, 8 Cir., 177 F.2d 469, certiorari denied 339 U.S. 913, 70 S.Ct. 572, 94 L.Ed. 1339; Baruch v. Commissioner, 11 T.C. 96, affirmed 2 Cir., 178 F.2d 402; Pettit v. Commissioner, 5 Cir., 175 F.2d 195.

Plaintiff has not cited any case which holds favorably to his position, but has been content to devote the major portion of the brief and argument to certain factual distinctions between this case and the cases cited above. It is urged that in several of the cited cases the sales involved marked the termination of the particular enterprise; in others there was no evidence that disposal was stimulated by the unprofitable character of the property and, further, that the funds received were not used in connection with the continuance of the business. In many instances these differences do exist but under our view of the purpose, intent, and language of the statute they are not sufficiently compelling to warrant a different result here. As pointed out above, we regard the carry-back provision as designed to average only the income and losses resulting from the normal *operation* of a business and not as a general equalizer for occasional losses merely incident to prudent management of a business enterprise in all its aspects. Consequently, all action required as a part of or in connection with prudent management is not necessarily synonymous with its *operation* as that term is used in Section 122(d)(5).

11. S.Rept.No.1631, 77th Cong., 2d Sess., p. 51.

Plaintiff has not contended at any time that he is in the business of buying and selling real estate, and while it is true that he sold only a small percentage of the assets used in his business of managing and operating realty for rental income, they were assets nevertheless and if such sales were a normal part of his *operation,* as we construe that term's use in the statute, his business would be extremely short lived.

█ In our opinion Section 122(d)(5) is applicable and precludes recovery by plaintiff on the facts here presented. The petition is therefore dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, Judge, concur.

WHITAKER, Judge (dissenting).

It seems to me that plaintiffs' business was the management of the real property left plaintiff Francis S. Appleby and his family by his father. Prudent management of this business—that is to say, prudent "operation" of the business—required the sale of certain parcels of this real estate. The majority opinion admits that the proceeds of the sale of this property were retained in the business and used in its operation. From the sale, necessitated by prudent operation, a loss was sustained. I do not think it is reasonable to say that this loss was "not attributable to the operation of a trade or business regularly carried on by the taxpayer."

The fact that the taxpayer's business was not one in which there were sharp fluctuations in income seems to me to make no difference. The loss permitted by section 23(s) of the Code was not restricted to the operation of a business in which there were sharp fluctuations in income. The deduction of such a loss was permitted if it was incurred in the operation of any business regularly carried on by the taxpayer.

I must respectfully dissent.