### APPLEBY et al.
### v.
### UNITED STATES.
### No. 50156.

United States Court of Claims.
Nov. 3, 1953.

John B. Coman, New York City, for plaintiffs.

J. W. Hussey, Washington, D. C., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

Two issues are presented in this case, the first which is identical with that dealt with in the cases of Appleby v. United States, 116 F.Supp. 410, and Appleby v. United States, 116 F.Supp. 415, this day

decided, and the opinion rendered there is equally applicable here. As to this issue, the factual differences between this and the above cited cases are ones of detail and may be briefly summarized.[1]

■ Plaintiffs, as executors of their father's estate[2] sue to recover $27,037.69, plus interest alleged to represent an overpayment of income tax paid by the estate for the year 1941, occasioned by the carry-back of an alleged net operating loss incurred in 1943. The claim is based on Sections 23(s) and 122 of the Internal Revenue Code; 26 U.S.C. (1946 Ed.) §§ 23(s) and 122. As in Nos. 50155 and 50157, supra, the net loss (here 1943) resulted from the sale of certain realty which had become unprofitable to operate in plaintiffs' business of managing and operating real estate for the production of rental income. The loss in question is in the amount of $55,231.94 and resulted from the sale by plaintiffs of the Jolson Theatre in New York during 1943. For the reasons set forth in Appleby v. United States, supra, we hold that this loss was "not attributable to * * * a trade or business regularly carried on by the taxpayer", within the meaning of Section 122(d) (5), and plaintiffs are therefore not entitled to carry such loss back to 1941.

This, however, does not completely dispose of the matter since unlike the other two cases, supra, plaintiffs incurred a net operating loss of $15,671.12 in 1943 quite apart from that which we have disallowed above. It is unquestioned that plaintiffs are entitled to carry that loss of $15,671.12 back to 1941 unless, as defendant contends, the adjustments required by Section 122(c) and (d) more

than absorb the entire amount ($15,671.-12) available as a loss carry-back from 1943, and therefore no net operating loss *deduction* was allowable for 1941. This section provides in substance that in arriving at the amount actually to be deducted from the 1941 net income, the net operating loss carry-back (here $15,671.-12) must be reduced by the amount by which the net income for 1941, computed with the exceptions required in Section 122(d), exceeds the net income computed without such exceptions. In the instant case, whether or not an excess results from this computation depends on the effect of an undisputed long-term capital loss of $75,406.28,[3] incurred by plaintiffs in 1941, as used in computing their income tax for that year. The proper role of this capital loss, in the computations incident to the conversion of the net operating loss carry-back, into a net operating loss *deduction* is the center around which the controversy between the parties revolves. Inasmuch as several sections of the Internal Revenue Code are involved and their application to the facts tends toward complexity, a fuller summary of those provisions and the relevant facts seems desirable.

As applicable to 1941, Section 122(c)[4] provides that:

"The amount of the net operating loss deduction shall be the aggregate of the net operating loss carry-overs and the net operating loss carrybacks to the taxable year reduced by the amount, if any, by which the net income (computed with the exceptions and limitations provided in subsection (d) (1), (2), (3), and (4)) exceeds, in the case of a tax-

1. Francis S. and Edgar T. Appleby, suing here, as executors, were also individual plaintiffs in the cases numbered 50155 and 50157, supra, respectively. As is apparent from our findings of fact, each of these three cases merely presents slightly different facets of the same business, i. e., the management of the property in their father's estate. This management by plaintiffs has been continuous since 1936 and the instant case deals with transactions prior to, while the other two cases are concerned with those subsequent to, the distribution of the property to the heirs.

2. See findings 11, 12, 13 and 14 for detailed statement of the property involved.

3. $75,406.28 is 50% of the actual loss suffered in 1941 upon the sale of securities held for more than 24 months.

4. 26 U.S.C. § 122(c) [as amended by Sec. 153(b), Revenue Act of 1942, 56 Stat. 798].

payer other than a corporation, the net income (computed without such deduction) * * *."

Subsection (d) (4)[5] is the important limitation involved here. This subsection provides that long-term capital gains and long-term capital losses should be taken into account for the purpose of Section 122, but should not be differently classified by percentages where held for different periods of time as set out in Section 117(b).[6] It then provides that "as so computed" the amount deductible on account of long-term capital losses should not in any case exceed the amount includible on account of long-term capital gains.

Plaintiffs paid $27,186.69 in income tax for the year 1941. The method of computation in arriving at that amount is important to this issue and is reflected below:

*Computation of Altrnative Individual Tax Under § 117(c)*[7]

| | |
|---|---|
| Net income | $19,503.37 |
|    Plus long-term capital loss | 75,406.28 |
| Ordinary net income | $94,909.65 |
| LESS: Personal exemption | 750.00 |
| Balance subject to normal tax | 94,159.65 |
|    Normal tax at 4 percent ........ $3,766.39 | |
|    Surtax ............................ 46,042.18 | |
| Partial tax | 49,808.57 |
| Minus 30 percent of net long-term capital loss | 22,621.88 |
| Total normal and surtax under Sections 11 and 12 ............................ $4,776.41 | |
| Tax liability under Section 117(c) | 27,186.69 |

It will be noted that this is an *alternative* tax computed as required by Section 117(c) of the Code of 1941. Plaintiff was required to pay the tax as so computed because it resulted in a higher tax than would have resulted from a computation of tax under Sections 11 and 12, 26 U.S.C. §§ 11, 12. Under the latter sections the following method was employed. Plaintiffs' ordinary net income was $94,909.65. When this amount was reduced by the amount of the allowable capital loss ($75,406.28) the resulting net income was $19,503.37. This amount was further reduced by the personal exemption of $750.00, leaving a balance subject to tax of $18,753.37. The total tax on this amount would have been $4,776.41. However, as noted above, plaintiffs' situation fell within the provisions of Section 117(c) and his tax as computed in the above tabulation amounted to $27,186.69, which was paid.

At this point the different manner in which the capital loss was employed in the two computations of the tax should be noted. Under the method provided for in Sections 11 and 12 the capital loss was used to reduce the tax by subtracting the total amount ($75,406.28) from the ordinary net income ($94,909.65) *before computing the tax.* Under the alternative method the capital loss was used to reduce the amount of the partial tax by subtracting 30 percent ($22,621.88) of the loss from the partial *tax itself*

---

5. (d) *Exceptions, additions, and limitations.* The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows:
   * * * * *
   "(4) Long-term capital gains and long-term capital losses shall be taken into account without regard to the provisions of section 117(b). As so computed the amount deductible on account of long-term capital losses shall not exceed the amount includible on account of long-term capital gains, and the amount deductible on account of short-term capital losses shall not exceed the amount includible on account of short-term capital gains; * * *."

6. 26 U.S.C. § 117(b).

7. As applicable to 1941 this section, 26 U.S.C. § 117, Internal Revenue Code of 1939, 53 Stat. 51, provides:

"§ 117. Capital gains and losses
   * * * * *
"(c) *Alternative taxes.*
   * * * * *
"(2) *In case of net long-term capital loss.* If for any taxable year a taxpayer (other than a corporation) sustains a net long-term capital loss, there shall be levied, collected, and paid, in lieu of the tax imposed by sections 11 and 12, a tax determined as follows, if and only if such tax is greater than the tax imposed by such sections:

"A partial tax shall first be computed upon the net income increased by the amount of the net long-term capital loss, at the rates and in the manner as if this subsection had not been enacted, and the total tax shall be the partial tax minus 30 percentum of the net long-term capital loss."

($49,808.57), as computed on the ordinary net income unreduced by the capital loss.

In view of the above facts plaintiffs now argue that inasmuch as the alternative tax was computed on the ordinary net income ($94,159.65), unreduced by the capital loss ($75,406.28), their net income is the same (i. e., $94,159.65) whether computed with or without the exceptions and limitations of Section 122 (d) (4), with the result that there is no excess to be subtracted from the net operating loss carry-back ($15,671.12), and the *deduction* for 1941 should be in that amount. It is further contended that the fact that 30 percent of the capital loss was subtracted from the partial tax ($49,808.57), thereby allowing a tax benefit on account of the capital loss, is immaterial since Section 122(c) deals only with readjustments of *net income* and nothing is said specifically about adjustments which might be allowed on the partial tax. We do not agree.

As we interpret Section 122 (c), the various adjustments required in the conversion of a net operating loss carry-back to a net operating loss *deduction* are designed to insure that the deduction represents a true loss and to prevent the combining of various relief allowances in the final computation. Thus it is undisputed that had plaintiffs' position been such as to have rendered the alternative tax computation unnecessary, the benefit gained by deducting the capital loss from net income would have to be offset before a net operating loss in 1943 could be carried back to 1941 as a deduction. In this respect, the situation before us is not qualitatively distinguishable. In both computations the capital loss is utilized to afford a tax benefit. While in the instant case plaintiffs' category was such as to require a different method of applying the capital loss to reduce the amount of the tax (i. e., subtracting 30% of the capital loss from the *partial tax* rather than subtracting 100% of it from the *net in-*come before computing the tax), it is nonetheless true that it was employed and that the taxpayer benefited from the entire $75,406.28 loss involved. Having thus enjoyed the benefit in the initial computation, it must now be offset according to the statute before the allowable carry-back can properly become a net operating loss deduction for the taxable year 1941.

The result of this conclusion as applied to the facts of this case is reflected in the following tabulation:

| | |
|---|---:|
| Net operating loss carry-back | $15,671.12 |
| Less: Section 122(c) adjusted net income | $19,503.37 |
| Add: Long-term capital loss (Section 122(d) (4)) | 75,406.28 |
| Net income computed with the exceptions and limitations provided in sub-sections (d), (1), (2), (3), and (4) | 94,909.65 |
| Net income computed without net operating loss deduction | 19,503.37 |
| Decrease required by section 122(c) | 75,406.28 |
| Net operating loss deduction | None |

Since the net income computed with the limitations of Section 122(d) (4) ($94,159.65) exceeds the net income computed without such limitations ($19,503.37) by $75,406.28, subsection 122(c) requires that the net operating loss carry-back ($15,671.12) be reduced by that amount in arriving at the net operating loss deduction. The result is a minus quantity, and in the absence of a net loss deduction for 1941 there was no overassessment of plaintiffs' income tax for that year. It follows that plaintiffs are not entitled to recover here, and the petition is dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, Judge, concur.

WHITAKER, Judge (dissenting in part).

I dissent for the reasons stated in the case of Appleby v. United States, 116 F.Supp. 410, this day decided.