**E. A. ROBERTS, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 16988.**

United States Court of Appeals
Fifth Circuit.

July 23, 1958.

William H. Armbrecht, John W. McConnell, Jr., Armbrecht, Jackson, McConnell & DeMouy, Mobile, Ala., for petitioner.

Melvin L. Lebow, Atty., Dept. of Justice, Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attys.,

Dept. of Justice, Nelson P. Rose, Chief Counsel, Int. Rev. Ser., Washington, D. C., Charles P. Dugan, Sp. Atty., Arlington, Va., for respondent.

Before RIVES, JONES, and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

The Tax Court decided that there are deficiencies in income tax for the taxable years 1945 and 1946 in the respective amounts of $42,967.50 and $38.391.44. Those deficiencies resulted from the Tax Court's determination of the net operating loss sustained by the taxpayer during the year 1947 available to him as a carryback to the years 1945 and 1946 under Section 122 of the Internal Revenue Code of 1939. The pertinent parts of that section and of the related section 23 read as follows:

"§ 23. *Deductions from gross income.* In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"(s) *Net operating loss deduction.* For any taxable year beginning after December 31, 1939, the net operating loss deduction computed under section 122. \* \* \*"

"§ 122. *Net operating loss deduction.*

"(a) *Definition of net operating loss.*

"As used in this section, the term 'net operating loss' means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d).

"(b) *Amount of carry-back and carry-over.*

"(1) *Net operating loss carry-back.* If for any taxable year beginning after December 31, 1941, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years, \* \* \*.

\* \* \*. \* \* \*

"(d) *Exceptions, additions, and limitations.* The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows:

\* \* \* \* \* \*

"(5) *Deductions* otherwise allowed by law *not attributable to the operation of a trade or business regularly carried on by the taxpayer* shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross *income not derived from such trade or business.* \* \* \*" (Emphasis supplied.) 26 U.S.C.A. § 23 and § 122.

During the year 1947 and prior thereto, the taxpayer was chief executive of the Waterman Steamship Corporation, director in several other corporations, and owner and operator of several businesses—a hotel, a farm, a golf course, and a seafood business. The pertinent losses and gains for the year 1947 are as follows:

Losses:

Operation of hotel, golf course, farm
and seafood business ......... $231,085.05
Sale of hotel ..................... $617,891.24

Gains:

Dividends, interest, capital gains ... $253,167.92
Rent (Net) (Wife's) ............. $ 14,033.25
Salaries and director's fees ........ $200,881.00

---

The taxpayer contends:

That the salaries and director's fees ($200,881.00) are not income attributable to the "operation of a trade or business regularly carried on" by the taxpayer and may, along with the dividends, interest, and capital gains ($253,167.92), to their total be subject to a deduction of the loss from the sale of the hotel ($617,891.24), which is "not attributable to the operation of a trade or business regularly carried on by the taxpayer." Therefore, the only income resulting from the operation of such a trade or business is the rental income ($14,033.25) which is used to offset the business deduction of $231,085.05, giving at net operating loss of $217,051.80.

The Commissioner contends:

That the income from salaries and director's fees ($200,881.00) is income "derived from such trade or business" and along with the rental income ($14,033.25) is subject to the business deduction of $231,085.05, giving a net operating loss of only $16,170.80.

Both the taxpayer and the Commissioner concede that the loss from the sale of the hotel ($617,891.24) falls within the first italicized phrase of section 122(d) (5), i. e., "Deductions \* \* \* not attributable to the operation of a trade or business regularly carried on by the taxpayer." The question at issue is whether the income from salaries and director's fees ($200,881.00) is within the meaning of the second italicized phrase of said section, i. e., "income not derived from such trade or business."

The Tax Court, after some uncertainty, has decided that a salaried occupation is a "trade or business regularly carried on by the taxpayer" within the meaning of section 122(d) (5) of the

1939 Code.[1] The Courts of Appeals for the Second, Third, and Ninth Circuits have agreed with the present position of the Tax Court.[2]

With a skill and ability commensurate with their daring, petitioner's counsel attack the rationale of each of those decisions and insist that none of them have given due consideration to the entire phrases and especially to the word "operation." Before we examine those decisions, let us briefly state the intent and purpose of Congress in allowing the net operating loss provision.

This concept had its birth in section 204 of the Revenue Act of 1918, which limited "net loss" to only "net losses resulting from * * * the operation of any business regularly carried on by the taxpayer * * *" and provided for a carry-back and carry-over of net losses.[3] This section was in substance re-enacted in the 1921, 1924, 1926, 1928, and 1932 Revenue Acts, each permitting only a net loss carry-over.[4] The National Industrial Recovery Act of 1933[5] eliminated the net loss provision, but a two-year carry-over provision was re-enacted in 1939,[6] and a two-year carry-back came about in 1942.[7] The comparable provisions in the 1954 Code is section 172, allowing a two-year carry-back and a five-year carry-over for deductions. One major difference in several of these successive acts is the treatment of the sale of a business or business assets.[8] However, as has been stated, both parties agree that the loss from the sale of the hotel is a deduction "not attributable to the operation of a trade or business."

The legislative history of these provisions shows clearly that Congress intended to provide an "averaging" mechanism to assuage the effect of the yearly tax plan which "does not adequately recognize the exigencies of business, and, under our present high rate of taxation, may often result in injustice."[9] Congress further stated that this device was to apply to a "business operated at a loss for any year."[10] The Report of the House of Representatives explaining section 122 of the Revenue Bill of 1939 stated in part:[11]

---

1. Eastridge v. Commissioner, P–H 1957 T.C. Mem. Dec. para. 57,086; Wile v. Commissioner, P–H 1956 T.C. Mem. Dec. para. 56,090; Lagreide v. Commissioner, 23 T.C. 508, overruling Luton v. Commissioner, 18 T.C. 1153; Ranson v. Commissioner P–H 1952 T.C. Mem. Dec. para. 52,213.

2. Folker v. Johnson, 2 Cir., 1956, 230 F. 2d 906; Overly v. Commissioner, 3 Cir., 1957, 243 F.2d 576; Pierce v. United States, 9 Cir., 254 F.2d 885; Lagreide v. Commissioner, and Ranson v. Commissioner, note 1, supra.

3. Section 204(a) of the Revenue Act of 1918 [40 Stat. 1057 (1918)].

4. 42 Stat. 231 (1921); 43 Stat. 253 (1924); 44 Stat. 9 (1926); 45 Stat. 791 (1928); 47 Stat. 169 (1932). The 1932 Act changed the carry-over provisions from two years to one year. See 26 U.S. C.A., Internal Revenue Acts, 1924 to Date.

5. 48 Stat. 195, 209 (1933).

6. Section 211 Revenue Act of 1939 providing for section 122 of the Internal Revenue Code of 1939; 53 Stat. 862 (1939), 26 U.S.C.A. § 122.

7. 56 Stat. 807 (1942).

8. Under section 204(a) of the Revenue Act of 1921 [42 Stat. 231 (1921)], "net loss" included "losses * * * from the sale or * * * disposition of * * * capital assets used in the conduct of such trade or business." Section 122 (d) (4) of the 1939 Code did not contain these provisions, and many cases have held that an isolated or occasional activity, as a capital asset sale, will not come within this deduction provision. See Appleby v. United States, 1953, 116 F.Supp. 410, 127 Ct.Cl. 91; See also, 5 Mertens, Federal Income Taxation, § 29.-05. However, section 172(d) (4) (A) of the 1954 Code allows an inclusion of a loss from the sale of a capital asset and in that respect this case may not have arisen under the 1954 Code.

9. Senate Report No. 617, explaining section 204 of the Revenue Bill of 1918; 1939–1 (Part 2) Cum.Bull. 121–122.

10. H.R.Rep. No. 350, 67th Cong.; 1939–1 (Part 2) Cum.Bull. 176.

11. H.R.Rep. No. 855, 76th Cong.; 1939–2 Cum.Bull. 504, 508, 517. This report also stated:
    "The bill, together with the committee amendments, permits taxpayers to carry over net operating business losses for a

"In the interest of equity, the Committee, in the bill as reported, has recommended an Amendment under which individuals and partners are allowed a 2-year carry-over of losses. This carry-over is substantially the same as that which was granted to them under the Revenue Act of 1928.

\*　\*　\*　\*　\*　\*

"The exceptions and limitations provided in section 122(d) are for the purpose of insuring that only an economic loss will be taken into account \* \* \*."

The purpose of section 122 was recently stated by the Supreme Court in Libson Shops, Inc., v. Koehler, 1957, 353 U.S. 382, 386, 77 S.Ct. 990, 993, 1 L.Ed.2d 924:

"The requirement of a continuity of business enterprise as applied to this case is in accord with the legislative history of the carry-over and carry-back provisions. Those provisions were enacted to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. They were designed to permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year."

With indefatigable emphasis upon the words *operation* of a trade or business regularly carried on," the petitioner asserts that the obvious intent of Congress throughout the years, in allowing the net operating loss deduction to be an amelioration of the tax burden on greatly fluctuating businesses, can only be carried out by a specific division of all income into (1) income derived from the operation of a trade or business regularly carried on and (2) income not derived from the operation of a trade or business regularly carried on—deductions being allowed in full to the former and deductions being limited to the extent of the income in the latter. He further says that the former division can never include income from salaries, wages, bonuses, or personal services performed as an employee because by its nature the net operating loss must indicate a true economic loss; and wage earners and salaried men, employing no capital in their "trade or business," cannot suffer net losses which can be carried back or carried over to the other years.

The petitioner's principal authority for these assertions is found in the case of Hughes v. Commissioner, 10 Cir., 1930, 38 F.2d 755, 757. This case concerned the question of whether an attorney's income from his profession and salaries as a member of bank executive committees was income from the "operation of any trade or business regularly carried on" which could be offset by losses from personal investments. While this case arose under section 204(a) of the Revenue Act of 1921, the difference in that section and the present section 122 is immaterial for the case at bar.[12] The Hughes decision held unequivocally the petitioner's position and stated:

period of 2 years. Prior to the Revenue Act of 1932, such 2-year carry-over was allowed. No net loss has ever been allowed for a greater period than 2 years. In the Revenue Act of 1932, the 2-year net loss carry-over was reduced to 1 year and in the National Industrial Recovery Act the net loss carry-over was entirely eliminated. As a result of the elimination of this carry-over, a business with alternating profit and loss is required to pay higher taxes over a period of years than a business with stable profits, although the average income of the two firms is equal. New enterprises

and the capital-goods industries are especially subject to wide fluctuation in earnings. It is, therefore, believed that the allowance of a net operating business loss carry-over will greatly aid business and stimulate new enterprises."

12. Note H.R.Rep. No. 179 of the 68th Cong., stating that section 206(a) of the Revenue Bill of 1924 corresponded to section 204(a) of the 1921 Code, the only change being that in the 1921 Code the term "net loss" meant only "losses," where in the 1924 and later codes the term "net loss" referred to "deductions," giving a somewhat broader scope.

"Considering the manifest intention of Congress to restrict the application of the section and the evident purpose of the law, it is our opinion that the section has no application to wage-earners, salaried or professional men. Wage-earners and salaried men may be out of work, and subject to no tax. But, employing no capital in their 'trade or business regularly carried on,' they suffer no net losses that should be carried over to other years. Collections may be poor for doctors and lawyers; but the sick must be treated in good times and bad; the services of lawyers are sought in bankruptcy and receiverships and litigation in hard times, as they are sought in other matters in times of prosperity. The capital of doctors and lawyers is limited to instruments and libraries, which are not for barter or sale, and the market value of which is not ordinarily reflected in income tax returns. There may exist large firms, with heavy overheads, which actually show a net loss for some years. But certainly 'net losses' of salaried or professional men were not of enough public concern to command the solicitude of Congress. The petitioner is therefore right, in considering his income from his profession, and the salaries he received from the banks, as 'gains or profits not derived from such trade or business,' under 204(a) (3). Such income was unrelated to his business of investment banking, and he was entitled to deduct this unrelated profit from his likewise unrelated losses, in arriving at his net loss." Hughes v. Commissioner of Internal Revenue, supra, 38 F.2d 759.

It is seen that the Hughes decision, in construing the intent of Congress, applied a limited meaning to the words "trade or business" as used in the phrase "operation of any trade or business regularly carried on."

The same question was presented to the Second Circuit in the case of Folker v. Johnson, 2 Cir., 1956, 230 F.2d 906, heavily relied upon by the respondent, and that court held the narrow or limited interpretation of the Hughes decision did not properly carry out congressional intent, but that the words "trade or business" as used in section 122 should have the same meaning as in section 23 (the deduction section). The court stated at 230 F.2d 908:

"It is true that the same phrase used in different parts of a complex statute does not necessarily carry the same meaning in the two different contexts. * * * But where the purpose of the two statutory provisions is similar, a consistent interpretation is desirable and equitable. In this instance we think a consistent interpretation is necessary in order to fully effectuate the not dissimilar purpose of both sections. It should be noted that the net operating loss defined in Section 122 is utilized in the statutory scheme by taking a deduction as provided in the deduction section of the Code, Section 23(s)."

In brief opinions, both the Third and Ninth Circuits have cited the Folker decision with approval and summarily held that income from a salary results from the "business" of selling one's own service and such income is not non-business income under section 122.[13]

■ We are not convinced that all of those cases are in error. It is true that a taxpayer receiving only salaried income can rarely, if ever, suffer a complete loss, that is get less than nothing. If, however, he is also engaged in another trade or business, or suffers a loss from another source, the wide fluctuations to which his salary is subject, though not reaching the minus side of zero, should properly be considered in offsetting lean years against lush years.

■ The word "operation" was used for another purpose; that is to refer

13. See Overly v. Commissioner, and Pierce v. United States, note 2, supra.

to the day-to-day carrying on of business, rather than, as for example in this case, the sale of property previously used in business. See Pettit v. Commissioner, 5 Cir., 1949, 175 F.2d 195; Overly v. Commissioner, P–H 1956 T.C.Mem.Dec. para. 56,197, affirmed per curiam, 3 Cir., 1957, 243 F.2d 576; Guggenheimer v. Commissioner, 2 Cir., 1954, 209 F.2d 362; Puente v. Commissioner, 9 Cir., 1952, 199 F.2d 940; Sic v. Commissioner, 8 Cir., 1949, 177 F.2d 469, certiorari denied, 339 U.S. 913, 70 S.Ct. 572, 94 L.Ed. 1339; see also, Appleby v. United States, 1953, 116 F.Supp. 410, 127 Ct.Cl. 91; Charles Weill, 1951, 17 T.C. 318.

A construction of section 122(d)(5) to fulfill the purpose for which it was intended seems to us to accord with the present position of the Tax Court and of the Second, Third, and Ninth Circuits.

The decision of the Tax Court is therefore

Affirmed.