ANDREW LITTLE, JR., AND MYRN H. LITTLE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61201. Filed May 6, 1960.

*Oscar I. Koke, C.P.A.*, for the petitioners.
*John D. Picco, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $18,482.39 in the income tax of the petitioners for 1951. The parties state that the first issue is whether the petitioners, in computing long-term capital gains from the sale of breeding stock, may use a zero basis as the petitioners contend or must use the adjusted inventory basis as the Commissioner contends. This statement is inadequate and misleading. The only other issue is whether 50 per cent of the 1951 net long-term capital gains which escaped tax is to be subtracted from the 1952 net operating loss carryback in computing the net operating loss deduction for 1951 under section 122(c), where the tax for 1951 is computed by the use of the alternative tax-computing method whereby the tax on capital gains is separately computed as provided in section 117(c). The facts have been presented by a stipulation which is adopted as the findings of fact.

The petitioners, husband and wife, filed a joint income tax return for 1951 with the collector of internal revenue for the district of Idaho. Andrew Little, Jr., has been engaged in the business of raising and selling sheep and cattle since 1942. He had large breeding herds of cattle and sheep in 1951 and 1952. He sold lambs and steers which he raised and he also sold wool sheared from his sheep. Selected ewes and buck lambs and heifer calves which he raised were added to the breeding herds each year. Registered male animals were purchased to improve his stock. Some animals which he had raised were culled from the breeding herds and sold at times.

Andrew has used an accrual method of accounting including the "unit-livestock-price" inventory method since he took over the business in 1942. The breeding animals which he raised were included in his inventories. He has never requested or obtained permission from the Commissioner to change to the cash basis system of accounting. The petitioners consistently reported the proceeds of sales of culled breeding stock as ordinary income on their returns through the year 1952.

The petitioners claim and the Commissioner concedes that the gains from the sales in 1951 of breeding stock held for more than 6 months may be reported as long-term capital gains. The petitioners contend that they are entitled to use a zero basis in computing their net long-term capital gains for 1951 from the sale of raised breeding stock, while the Commissioner insists that they must use their adjusted inventory valuation basis. Obviously a false issue is thus presented because the net long-term capital gains and the tax thereon would be greater under the petitioners' theory than under the Commissioner's theory if there were no more to the issue than the parties have stated. The Commissioner is not claiming an increased deficiency, and, of course, the petitioners are not claiming that their tax should be increased. We could stop at this point and merely agree with the parties that the petitioners are entitled to compute their tax by regarding the sales of raised breeding herd culls as long-term capital gains and agree with the Commissioner that the adjusted inventory basis should be used in computing those gains.

However, it might be appropriate to point out before leaving this subject that the tax result which the Commissioner would reach is the correct one under either theory. The petitioners, relying upon *Scofield* v. *Lewis*, 251 F. 2d 128, argue that the inclusion of the raised breeding stock in Andrew's inventories under the "unit-live-stock-price" method was improper. Cf. *Carter* v. *Commissioner*, 257 F. 2d 595, 600–601. The parties have stipulated the adjusted inventory bases of the raised breeding herd culls sold in 1951. The total of those bases is $7,280.62. If it was wrong to inventory those animals, then that amount could not be a proper part of the opening inventory for 1951. The Court must assume if it is not already clear from the stipulation, that the amount was included in the opening inventory for 1951. It must be removed from the opening inventory and the petitioners' tax will be larger than the amount for which the Commissioner is contending if the long-term capital gains here in question are computed on a zero basis.

On the other hand, if the inventory method consistently used by Andrew with regard to raised breeding herd was proper, then again the $7,280.62 item must be removed from the opening inventory and used as a basis in computing long-term capital gains, as the Commissioner contends. *J. Clifford Gibbs*, 33 T.C. 27. A double deduction of this amount would otherwise result under this computation.

Thus, the Commissioner's computation arrives at the correct amount of tax, regardless of whether the raised breeding herd is included in inventory or is to be excluded from inventory.

There is no reason to conclude that Andrew was forced to use the

"unit-livestock-price" method of inventorying his sheep and cattle. He had some choice in this matter when he undertook this business. There are advantages in using such a method. There may be years, particularly while such a business is in its formative stage, when expenses exceed income and deductions are not beneficial. Taking raised breeding animals into inventory under the "unit-livestock-price" method would result in reporting some income for those years to offset expenses. The amount taken into inventory in any year is available as a basis when culls are sold and is also a basis against which to compute depreciation while the animals are used for breeding purposes. There are no doubt other advantages to taxpayers using such an inventory method. This Court is in no position to say in this case that the inventory method which Andrew chose and consistently followed and which the Commissioner has followed in computing the gain from the sale of these culled cattle was an improper method.

The second issue is whether the one-half of the 1951 long-term capital gains which escapes taxation is to reduce the net operating loss carryback from 1952 in computing the net operating loss deduction for 1951. It is stipulated that the amount of the 1952 net operating loss which is a carryback to 1951 is $11,962.92. The Commissioner reduced that amount by $10,363.37, representing one-half of the 1951 long-term capital gain of $20,726.74, in computing the 1951 net operating loss deduction. The net operating loss deduction allowed under section 23(s) is computed under section 122. Subsection (c) is entitled "Amount of Net Operating Loss Deduction." It provides that the amount of that deduction shall be the aggregate of the net operating loss carryovers and of the net operating loss carrybacks to the taxable year (here $11,962.92), "reduced by the amount, if any, by which the net income (computed with the exceptions and limitations provided in subsection (d) (1), (2), (3), and (4)) exceeds, in the case of a taxpayer other than a corporation, the net income (computed without such deduction)." One of the exceptions and limitations of subsection (d) is "(4) Gains and losses from sales or exchanges of capital assets shall be taken into account without regard to the provisions of section 117(b)." Section 117(b) provides that in the case of an individual, 50 per cent of the amount of the excess of net long-term capital gains over net short-term capital loss shall be a deduction from gross income. It appears here that the Commissioner followed those provisions of the law precisely in arriving at a net operating loss deduction of $1,599.55. It is wholly immaterial that the petitioners computed their 1951 tax under the provisions of section 117(c)(2). *Appleby* v. *United States*, 116 F. Supp. 418.

The parties have stipulated that there will be a deficiency of $10,866.62 for 1951 in case the Commissioner wins on both of the litigated issues.

*Decision will be entered that there is a deficiency of $10,866.62 in the petitioners' income tax for 1951.*