## UNITED STATES v. ADAMSON et al.
### No. 11396.

Circuit Court of Appeals, Ninth Circuit.
May 16, 1947.

Sewall Key, Acting Asst. Atty. Gen., A. E. Prescott, F. E. Youngman and Hilbert Zarky, Sp. Assts. to the Atty. Gen., James M. Carter, U. S. Atty., E. H. Mitchell and George M. Bryant, Asst. U. S. Attys., all of Los Angeles, Cal., for appellant.

Zagon, Aaron & Sandler and Nathan Schwartz, all of Los Angeles, Cal., for appellees.

Before STEPHENS, HEALY and BONE, Circuit Judges.

BONE, Circuit Judge.

In 1925 appellee, James H. Adamson, and his brother entered into a partnership at will for developing and dealing in yarns and textiles, appellee furnishing the capital, and the brother, Percy Adamson, the technical skill. By 1931 this partnership had succeeded in developing a new type of elastic yarn, known as Lastex, and had secured patent and trademark rights to it. The Adamson partnership then entered into two contracts for the sale, to the United States Rubber Co., of the use of these patent and trademark rights in consideration of the payment of certain royalties to them. During November of 1931 the brother, Percy Adamson, assumed the exclusive management of the partnership business without the consent of appellee, and later, in March, 1934, completely repudiated any obligation springing from the partnership, and denied the existence of the partnership. Percy Adamson then made two new contracts with the United States Rubber Co. which replaced the two contracts above mentioned. (After November 1, 1931 the said partnership and appellee, James H. Adamson, ceased to engage in the business of developing and dealing in yarns and textiles. The lower court found that the partnership "terminated on or about the month of December, 1932".)

Aggrieved by this conduct of his brother, appellee commenced an action in the Supreme Court of the State of New York in May, 1934 for a dissolution of the partnership and an accounting. To finance this litigation appellee assigned to his attorneys a share of any judgment he might recover in the action. In 1939, and in this adversary proceeding, the New York court rendered judgment declaring appellee, James H. Adamson, to have a one-half undivided interest, as tenant in common, in the two (new) contracts between his brother, Percy Adamson, and the United States Rubber Co., and awarded appellee $271,044.92 for the damages already suffered by him. The brother paid the sum so awarded as damages. (This item is not involved in this suit.)

To settle the matter of the remaining undivided one-half interest in the two contracts, appellee, his attorneys, his brother,

and the United States Rubber Co. entered into a four-party contract in October, 1939 (which gives rise to this controversy) whereby the attorneys' claims were settled and appellee relinquished, assigned and set over to his brother whatever right he might have under the two contracts referred to in the judgment, together with all of his right, title and interest in and to any and all assets of the said partnership. Under this contract appellee, James H. Adamson, was to receive $215,000 to be paid to him in bi-monthly installments over a period of years, some of which, amounting to $32,500, were received during the taxable year (1940) here in question.

Appellees, Adamson and his wife, filed their joint income return for the calendar year of 1940 and in this return they treated and reported this $32,500 item as ordinary income and paid the tax due thereon, in installments. Claiming that this item of $32,-500 represented long term gain from the sale of capital assets under the said contract of October, 1939, and that it had been improperly and erroneously included and reported in their 1940 return, as income from royalties, and further asserting that the said capital assets so sold had been held by appellees for more than two years, appellees filed claim for refund of $2,577.52, this amount being asserted as overpayment of the amount lawfully due and owing by them under their 1940 return. Their refund claim being rejected and disallowed, appellees brought this action in the district court to recover the sum of $2,577.52, and allowable interest, upon the theory that this amount had been erroneously and illegally assessed against and collected from them. The Government appeals from a judgment sustaining appellees' claim.

The material facts were in large part stipulated and the facts as found by the court below were substantially as stipulated. It accepted the taxpayers' theory and held that the $32,500 received under the four-party contract referred to was capital gain and not ordinary income. The view of the court is expressed in its oral opinion from the bench, as follows:

"The Court: It seems to me that the Stilgenbaur case [9 Cir., 115 F.2d 283] is binding, in the light of the stipulation of facts and in the light of the agreement which was entered into in this case. That decision holds that any method of terminating the partnership, whether it be by mutual agreement dissolving the partnership and a withdrawal of capital by one partner, or whether it be sold to outsiders, or whether it be by the legal process of dissolution, any one of these is treated by the Ninth Circuit as a sale, and taxable as capital loss or gain, and not as income.

"For that reason, the judgment should be for the plaintiff, and it will be so ordered."

The parties are in agreement in their briefs that the substantial question presented is: "Whether the sum of $32,500 received in 1940 by James H. Adamson, one of the taxpayers herein, under the circumstances shown by the Record, constituted ordinary income within the meaning of Section 22 (a) of the Internal Revenue Code [26 U.S.C.A. Int.Rev.Code, § 22(a)] or whether it constituted gain upon the sale of a capital asset within the meaning of Section 117 (a) of the Internal Revenue Code [26 U.S.C.A. Int.Rev.Code, § 117 (a)], only 50 per centum of which should be included in taxable income."

This agreement on the fundamental and decisive issue is in harmony with the stipulation of facts presented to the court below and on which its judgment rests. This stipulation narrowed the issue to (sic)— "the difference between the computations of the plaintiffs and the computations of the Government result from the inclusion in the said return of the sum of $32,500 received * * * under the agreement dated October 20, 1939 * * *". In its brief, the Government tells us that: "In this case there is no controversy over the amount of income or profit received in the year 1940 under the contract of October 20, 1939, although there is some doubt as to whether the correct amount has been reported. The principal question is whether the amount received is taxable as ordinary income or as gain from the sale of a capital asset."

In this state of the record we see no controversial question (or "some doubt") as to whether or not the income was correctly reported. Under the stipulation of facts

the trial court was not called upon to determine that issue.

We consider the reasoning supporting the views expressed by the Tax Court when considering the identical question (presented as to income for the previous year) as very persuasive.[1] It ruled that by the said contract of October, 1939 James H. Adamson "disposed of *all* his interest in the *then remaining assets* of the partnership, including the Rubber Company contracts and any interest he may then have had in the patent and trademark, which although the partnership had been terminated had not theretofore been divided and distributed". [Emphasis supplied.] The Tax Court concluded that the payments received by James H. Adamson under the contract of October, 1939, "constituted proceeds from the sale of capital assets and that it is subject to tax at long term capital gain rates under Sections 117 (a) and (b) of the Code".

The conclusion announced by the Tax Court finds support in Stilgenbaur v. United States, 9 Cir., 115 F.2d 283, 287 where we held that: "A co-ownership in real and personal property which is saleable and sold is a capital asset within the definition of § 117 (b) of the Revenue Act of 1934."

Since the district court found that the partnership was terminated about December, 1932, the contract in 1939 was, strictly speaking, not one disposing of any interest in an existing partnership, although it is equally clear that James H. Adamson did, by this contract, attempt to divest himself of any possible claim to his former partnership interest. At that time James H. Adamson had certain "rights" against Percy Adamson as a result of the New York judgment and in our view the contract of October, 1939 was intended to (and did) satisfy all of those rights, whatever they were. The contract was likewise a sale of whatever rights appellee then had in the two contracts between Percy Adamson and

the United States Rubber Co., i. e., the sale of one-half undivided interest as a tenant in common to the reversionary rights in the patent and trademark. The sale of either, where the (terminated) partnership was not in the business of selling patents and trademarks, would be the sale of a capital asset.[2]

Here the taxpayer was "co-owner" of "personal" property which was "saleable and sold" and it follows, therefore, that the district court was correct in concluding that the $32,500 in question was capital gain.

Judgment affirmed.

---

[1] James H. Adamson v. Commissioner, Docket #3154, decided Dec. 11, 1946.

[2] Patents: Commissioner v. Hopkinson, 2 Cir., 126 F.2d 406; Commissioner v. Celanese Corp. of America, 78 U.S.App. D.C. 292; 140 F.2d 339.

Trademarks: Seattle Brewing & Malting Co., 6 T.C. 856; Rainier Brewing Co., 7 T.C. 162. Helvering v. Smith, 2 Cir., 90 F.2d 590 may be distinguished on the ground that there what the taxpayer sold was only the right to receive future income.