## LAZIER v. UNITED STATES et al.

### No. 13712.

United States Court of Appeals
Eighth Circuit.

Nov. 10, 1948.

Paul Campbell, of Washington, D. C., for appellant.

Harry Marselli, Sp. Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., George A. Stinson, A. F. Prescott and John P. Wenchel, II, Sp. Assts. to the Atty. Gen., and P. W. Lanier, U. S. Atty., of Fargo, N. D., on the brief), for appellees.

Leon B. Brown, of Los Angeles, Cal., amicus curiæ.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

The appellant, a North Dakota farmer, engaged exclusively in the business of farming, in the year 1943 sustained a loss of $18,316.99 on a sale of farms and farm machinery used in the operation of his business. Believing that $15,157.65 of this loss constituted a "net operating loss carry-back" within the meaning of § 122 of the Internal Revenue Code, as amended, 26 U.S.C.A.Int.Rev.Code, § 122, and that this "net operating loss carry-back" had the effect of extinguishing his income tax liability for the years 1941, 1942 and 1943, he filed claims for a refund of taxes paid on income for 1941 and 1942 and on account of estimated income for 1943. These claims were denied, and this action followed. The defendants (appellees) denied liability.

The appellant (taxpayer) moved for a summary judgment. At the hearing on his motion it appeared that there was no genuine issue of fact involved in the case; that the sole issue, so far as the merits of the taxpayer's claim were concerned, was whether, under the applicable law, the loss sustained by him in 1943 from the sale of his farms and equipment was a "net operating loss" which could be carried back. If it was such a loss, the taxpayer was entitled to recover. If it was not a loss which could be carried back, the defendants were entitled to prevail. The District Court ruled against the taxpayer on the ground that the loss was not a "net operating loss." The court said (77 F. Supp. 241, 243): "In the instant case, the plaintiff is a farmer, and during the years in question was engaged in the operation of farms and the growing and marketing of products therefrom. He was in no sense engaged in the real estate business or in the buying and selling of farm machinery as a business. If, for example, the plaintiff had realized a profit through the sale of his farm or farm machinery, certainly such profit would not be considered as an operating profit. The converse should be true. Accordingly it seems to me that loss from the sale of the farms themselves could not be properly termed or classified as an operating loss. If the plaintiff had been a real estate dealer engaged in the business of buying and selling farm lands, the classification would be otherwise. Accordingly, plaintiff's complaint fails to recite a cause of action upon which relief can be granted and the Government's motion to dismiss should be granted." From the judgment of dismissal of his complaint, the taxpayer has appealed.

The sole question for decision by this Court is whether the loss sustained by the taxpayer in 1943 was a "net operating loss" which could be carried back. Certain procedural questions are argued in the briefs, but they were not ruled upon by the District Court and are therefore not properly before this Court.

The applicable law is § 122 of the Internal Revenue Code, as amended,[1] which defines "net operating loss" and provides for a "net operating loss carry-back" and a "net operating loss carry-over."

[1] Title 26 U.S.C.A. Int.Rev.Code.

"§ 122. Net operating loss deduction.

"(a) Definition of net operating loss. As used in this section, the term 'net operating loss' means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d).

"(b) Amount of carry-back and carry-over.

"(1) Net operating loss carry-back. If for any taxable year beginning after December 31, 1941, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years, except that the carry-back in the case of the first preceding taxable year shall be the excess, if any, of the amount of such net operating loss over the net income for the second preceding taxable year computed (A) with the exceptions, additions, and limitations provided in subsection (d) (1), (2), (4), and (6), and (B) by determining the net operating loss deduction for such second preceding taxable year without regard to such net operating loss.

"(2) Net operating loss carry-over. If for any taxable year the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the two succeeding taxable years, except that the carry-over in the case of the second succeeding taxable year shall be the excess, if any, of the amount of such net operating loss over the net income for the intervening taxable year computed (A) with the exceptions, additions, and limitations provided in subsection (d) (1), (2), (4), and (6), and (B) by determining the net operating loss deduction for such intervening taxable year without regard to such net operating loss and without regard to any net operating loss carry-back. For the purposes of the preceding sentence, the net operating loss for any taxable year beginning after December 31, 1941 shall be reduced by the sum of the net income for each of the two preceding taxable years (computed for each such preceding taxable year with the exceptions, additions, and limitations provided in subsection (d) (1), (2), (4), and (6), and computed by determining the net operating loss deduction without regard to such net operating loss or to the net operating loss for the succeeding taxable year).

"(c) Amount of net operating loss deduction. The amount of the net operating loss deduction shall be the aggregate of the net operating loss carry-overs and of the net operating loss carry-backs to the taxable year reduced by the amount, if any, by which the net income (computed with the exceptions and limitations provided in subsection (d) (1), (2), (3), and (4) exceeds, in the case of a taxpayer other than a corporation, the net income (computed without such deduction), or, in the case of a corporation, the normal-tax net income (computed without such deduction and without the credit provided in section 26(e) );

"(d) Exceptions, additions, and limitations. The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows:

"(1) The deduction for depletion shall not exceed the amount which would be allowable if computed without reference to discovery value or to percentage depletion under section 114 (b) (2), (3), or (4);

"(2) There shall be included in computing gross income the amount of interest received which is wholly exempt from the taxes imposed by this chapter, decreased by the amount of interest paid or accrued which is not allowed as a deduction by section 23(b), relating to interest on indebtedness incurred or continued to purchase or carry certain tax-exempt obligations;

"(3) No net operating loss deduction shall be allowed;

"(4) Gains and losses from sales or exchanges of capital assets shall be taken into account without regard to the provisions of section 117(b). As so computed the amount deductible on account of such losses shall not exceed the amount includible on account of such gains;

"(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. For the purposes of this paragraph deductions and gross income shall be computed with the exceptions, additions, and limitations specified in paragraphs (1) to (4) of this subsection.

*   *   *   *   *   *

It will be noted that § 122(a) provides that "the term 'net operating loss' means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d)." It will also be noted that paragraph (5) of subsection (d) provides: "Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. For the purposes of this paragraph deductions and gross income shall be computed with the exceptions, additions, and limitations specified in paragraphs (1) to (4) of this subsection."

The Commissioner of Internal Revenue has apparently ruled consistently that, because of the limitation contained in subsection (d) (5), an individual taxpayer who sustains a loss not attributable to the normal operation of a trade or business regularly carried on by him, may not carry over or carry back any part of such loss as "a net operating loss deduction."

In 1945 the Commissioner ruled that a taxpayer who sustained a loss through the sale of real estate which had been owned and operated by her as a source of income could, in computing her "net operating loss," as defined in § 122(a) of the Code as amended, deduct the loss "only to the extent provided in section 122(d) (5) of the Code, * * *." The Commissioner said (Int. Rev. Bulletin, Cumulative Bulletin 1945 [IT 3711], pages 162–164): "The basis for this conclusion is that, although it is determined that the property upon the sale of which the loss was sustained was used in A's business of managing and operating income-producing real estate, the loss from the sale thereof is 'not attributable to the operation of a trade or business regularly carried on by the taxpayer' within the purview of section 122(d) (5) of the Code, supra, since she was not a regular trader or dealer in real estate. In other words, as supported by the facts here presented, the only business regularly carried on by A was managing and operating her income-producing real estate and not

trading or dealing in real estate; the property was held primarily for use, rather than for sale, in her business; and the loss did not arise or result from the operation of such business but upon the disposition of assets used therein."

In Merrill v. Commissioner of Internal Revenue, 9 T.C. 291, decided September 9, 1947, the Tax Court considered the question of a taxpayer's right to deduct, as a net operating loss carry-over, a loss resulting from the disposition of his interest in a partnership. In a decision by Judge Leech of the Tax Court (which was reviewed by that court), it was said: "Having concluded the transaction was a transfer of petitioner's interest in the partnership to the remaining partners, it is necessary to determine the extent to which the loss resulting therefrom is a net operating loss within the limitations prescribed in subsection (d) (5) of section 122 of the code. Obviously, such transaction was not a part of the business of the partnership, and, so far as is revealed here, petitioner was not engaged in the business of buying and selling partnership interests. Cf. United States v. Adamson, 161 F.2d 942. The transaction was clearly outside the 'business regularly carried on' by the petitioner and no part thereof can be taken into consideration in determining petitioner's net operating loss for 1940, subject to be carried over into the taxable year 1941. The respondent's disallowance of the deduction is sustained."

In Sic v. Commissioner of Internal Revenue, 10 T.C. 1096, decided June 10, 1948, the question presented was whether a taxpayer, a retired farmer, who had sustained a loss through the sale of farm property in 1942, could carry over any part of the loss to the taxable year 1943. The Tax Court followed its ruling in the Merrill case. The concluding paragraph of its opinion in the Sic case (also written by Judge Leech, and reviewed by the court) is as follows: "The respondent contends the rationale of the Merrill case, supra [9 T.C. 291], is applicable and controlling here. We agree. The loss in question results from the sale of land and, although the land was used in the business of farming, its sale was an isolated transaction and

outside the business of farming which petioner 'regularly carried on.' Since it appears from the stipulated facts that the petitioner's only income was from his farming operations, no part of the loss is subject to carry-over into the taxable year 1943, under section 122(d) (5) of the Internal Revenue Code."

The case of Pettit v. Commissioner, 10 T.C. —— (Tax Court Memo. Dec., Docket No. 12650, entered June 10, 1948), presented the question whether a loss sustained from a sale in 1942 of real estate used by a taxpayer in growing and marketing citrus fruits was deductible as a net operating loss carry-over for 1943. The Commissioner had ruled that it was not deductible. The Tax Court's opinion, by Judge Arundell, is as follows: "Petitioner was engaged in the business of producing and selling citrus fruits and was not a dealer in real estate. Because the loss in question was derived from the ultimate sale of the entire property and did not arise from the marketing of citrus fruits, the determination by the respondent is approved. Joseph Sic, 10 T.C. 1096 (Dec. 16,435); Joseph L. Merrill, 9 T.C. 291 (Dec. 15,997); Lazier v. United States (D. C. N.Dak.) Jan. 22, 1948 [77 F.Supp. 241] * * *. See I.T. 3711, 1945 C.B. 162; Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389 (USTC P. 1008)."

The Tax Court again dealt with this problem in Baruch v. Commissioner of Internal Revenue, 11 T.C. 96, decided July 29, 1948. The taxpayer in that case had operated a farm as a business regularly carried on. He sold the farm in 1942 at a loss. The Commissioner allowed the loss in the computation of the taxpayer's net income for that year, but disallowed the balance of the net loss as a carry-over to the years 1943 and 1944. The Tax Court, in an opinion by Judge Black, ruled, as in the Sic case, that the loss which the taxpayer sustained in the sale of his farm in 1942 was not a loss attributable to the operation of a trade or a business regularly carried on by the taxpayer, was subject to the limitations of § 122(d) (5), and could not be carried forward to 1943 and 1944.

So far as we are aware, only two courts, other than the Tax Court, have considered the question involved in the instant case, namely, the court below and the United States District Court for the Northern District of Illinois. In the case of Foreman v. Harrison, 79 F.Supp. 987, 988, the plaintiff, who had been engaged in the business of manufacturing, sustained a loss from the sale of his factory building and land in the year 1943. He attempted to carry back his net loss to the year 1941 and to obtain a refund of taxes paid for that year. Judge La Buy, who heard the case, stated his "conclusions of Law" as follows:

"1. In applying Section 122 of the Internal Revenue Code, as effective in 1941 to 1943, a net operating loss to be available for carry-over or carry-back purposes must be one sustained as an incident to the ordinary and normal course of a trade or business regularly carried on by the taxpayer.

"2. The interpretation of the Commissioner is that an isolated transaction involving the sale of building and land, formerly necessary incidents to an operating business, cannot be included within the statutory section allowing net loss carry-over or carry-back for the reason that such sale for the purpose of terminating the manufacturing activity cannot reasonably be construed to come within the category of a transaction incurred in the ordinary and normal course of a trade or business regularly carried on by the taxpayer. This interpretation is consistent with the language and intent of the statutory section.

"3. The plaintiff not being in the business of selling land and buildings cannot carry-back his loss sustained in 1943 and charge the same against the net operating profit derived in 1941."

The taxpayer argues that, since Congress in § 122(a) has specifically defined "net operating loss" as "the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d)," and the loss sustained by the taxpayer in 1943 being concededly deductible and exceeding gross income, he necessarily had a "net operating loss" which he was entitled to carry back. The tax-

payer asserts that § 122(d) (5) has no application to a loss such as he sustained.

The construction of the statute for which the taxpayer argues, is, perhaps, not demonstrably wrong, but we think that the language used by Congress, the apparent purpose of the statute, and the qualification of "net operating loss," as defined in § 122(a), by the limitations provided in subsection (d), of which subsection (d) (5) was one, justified the Commissioner of Internal Revenue in adopting the construction which the taxpayer challenges.

It is possible that the Commissioner, the Tax Court and the District Courts, which have approved the Commissioner's interpretation of the statute, may have misconceived the intent of Congress with respect to the character of net losses which could be carried forward or back. No doubt, that intent could have been expressed in simpler and more understandable language. This Court, however, would not be justified in adopting the construction urged upon it by the taxpayer unless convinced that the statute has thus far been misconstrued by the taxing authorities and by the courts. See United States v. Armature Rewinding Co., 8 Cir., 124 F.2d 589, 591; Helvering v. Rebsamen Motors, Inc., 8 Cir., 128 F. 2d 584, 587. One reasonably may believe that in providing for the carrying forward and carrying back of "net operating losses," Congress was concerned with "net operating losses" sustained in the normal operation of a business regularly carried on by a taxpayer and was not concerned with losses attributable to the total or partial liquidation of the physical properties used in the conduct of the business. See Mertens, Law of Federal Income Taxation, Vol. 5, page 318, § 29.05. The taxpayer in the instant case, as has already been pointed out, was engaged exclusively in the business of farming and not in the business of selling farm lands or farm machinery.

Counsel for the taxpayer has stressed in his brief the nation-wide interest of taxpayers in the question involved in this case. A petition for certiorari to the Supreme Court should enable that Court to give the question nation-wide repose.

The judgment appealed from is affirmed.