CHARLES S. GUGGENHEIMER AND MINNIE S. GUGGENHEIMER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26684. Promulgated April 11, 1952.

*Edgar J. Goodrich, Esq.*, and *Edward First, Esq.*, for the petitioners.

*Robert B. Jacoby, Esq.*, for the respondent.

OPINION.

HILL, *Judge:* The first issue concerns the question whether in the computation of a net operating loss under section 122 of the Code the petitioner is entitled to deduct the loss he suffered on the sale of the Fifth Avenue property. The sale and the resulting loss occurred in the yeah 1945. The issue is material to the petitioner's tax liability for the two years before us (1943 and 1944), however, since petitioner seeks to apply to these taxable years the benefit of the net operating loss carry-back provisions of section 122.

In order for petitioner to prevail the evidence must show that the loss on the sale of the Fifth Avenue property is attributable to the operation of his trade or business [1] and, since the loss involved was from the sale of real property, the trade or business must be that of buying and selling real estate. *Joseph Sic,* 10 T. C. 1096, affd. 177 F. 2d 469; *Hartwig N. Baruch,* 11 T. C. 96, affd. 178 F. 2d 402; *Lazier v. United States,* 170 F. 2d 521; *Foreman* v. *Harrison,* 79 F. Supp. 987; cf. *Walter G. Morley,* 8 T. C. 904. Far from sustaining petitioner's position, the evidence indicates that, while the petitioner was engaged in the business of buying and selling real property, the Fifth Avenue property was not acquired, held or sold by him in the course of such business.

Sometime before his mother's death in 1927 and until the year 1939, petitioner was actively engaged in the business of buying and selling real estate in a joint venture with two others, William McCarthy and a Mr. Levine. (Their business will be hereinafter referred to for convenience as the association.) There is no evidence that petitioner was ever otherwise engaged in the business of buying and selling real estate after his mother's death in 1927.

The petitioner and his brother and sister inherited from their mother equal shares in the Fifth Avenue property, which had been petitioner's mother's residence up until the date of her death. It was not purchased or ever managed by the association. Petitioner and his brother and sister formed a partnership for the conservation, maintenance and liquidation of the property inherited from their mother, which included the Fifth Avenue property. This partner-

---

[1] SEC. 122. NET OPERATING LOSS DEDUCTION.

(a) DEFINITION OF NET OPERATING LOSS.—As used in this section, the term "net operating loss" means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d).

\*  \*  \*  \*  \*  \*  \*

(d) EXCEPTIONS, ADDITIONS, AND LIMITATIONS.—The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows:

\*  \*  \*  \*  \*  \*  \*

(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. For the purposes of this paragraph deductions and gross income shall be computed with the exceptions, additions, and limitations specified in paragraphs (1) to (4) of this subsection. \*  \*  \*

ship was not engaged in the business of buying and selling real estate. The Fifth Avenue property was a large opulent residence and was not of the type of property in which the association was interested. The petitioner, as the active member of the partnership, experienced considerable difficulty in his attempt to sell the Fifth Avenue property. He spent considerable sums on its upkeep and maintenance and was very desirous of selling the property. However, there appears to have been some dispute between him and his brother and sister as to the price which they should obtain for it. Accordingly, in 1937 petitioner purchased the property from the partnership, paying therefor $225,000 less the mortgage of $140,000. He agreed to share equally with his brother and sister any amount which he might obtain for the property over and above $200,000. He obtained what rents he could from the property, although they were insufficient to meet expenses, and finally sold it in 1945 at a price of only $125,000.

From the foregoing we believe that all of petitioner's dealings with respect to the Fifth Avenue property were separate and apart from his buying and selling operations with the association, so that the loss suffered on the sale of the property was not attributable to the operation of his business of buying and selling real property. Accordingly, the loss comes within the limitations of section 122 (d) (5) of the Code and, since the other 1945 losses did not exceed gross income, there could be no section 122 net operating loss in 1945 and no net operating loss carry-back from that year available for the years 1943 and 1944, and we so hold.

The second issue concerns the proper basis of the Fifth Avenue property in the determination of the amount of the loss suffered on the sale. This issue need not be considered since we have already decided that there is no net operating loss carry-back to the years 1943 and 1944 resulting from the sale, and the year 1945 is not before the Court.

The third issue concerns the petitioner's claimed deductions for traveling and entertainment expenses incurred with respect to his law business. The amount claimed was $2,500 for each of the years 1942 through 1945. By virtue of the fact that we have determined there is no net operating loss carry-back, we need not consider the deduction for the year 1945. However, the deduction claimed for the year 1942 is involved because of the tax forgiveness feature of the Current Tax Payment Act of 1943.

While in the petition there was a claim for both traveling and entertainment expenses, no evidence was introduced with respect to any traveling expenses. With respect to the entertainment expenses, the petitioner testified that one of the clubs to which he belonged, the "Bankers Club," was used almost exclusively by him for entertaining his clients in his law business. He testified that the dues of this club were either $100 or $150 per year and that his monthly bills there

ranged between $30 and $40 a month. On the basis of the evidence presented, we have found that the expenses incurred by the petitioner in entertaining clients at this club were ordinary and necessary business expenses and that an estimate of the reasonable amount thereof is $500 a year for each of the years 1942, 1943, and 1944. *Cohan* v. *Commissioner*, 39 F. 2d 540. With respect to the other claimed expenditures for entertainment, petitioner's evidence was indefinite, vague and confusing, consisting mainly of his own estimates, and was insufficient to support a finding that any additional expenditures were made for entertainment in these years. Accordingly, we hold that the petitioner has failed to meet his burden of proof with respect to any claimed expenditures for entertainment other than those incurred at the "Bankers Club."

*Decision will be entered under Rule 50.*