Sydney G. DYER, M. D., and Zanna Dyer, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 1082.

United States District Court
W. D. Kentucky,
at Paducah.
July 22, 1960.

Michael Avedisian, Paducah, Ky., for plaintiffs.

Herbert L. Awe, Dept. of Justice, Washington, D. C., William B. Jones, U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

This action was instituted by Dr. Sydney G. Dyer and his wife, Zanna Dyer, June 4, 1959, to recover $1,374.07, and interest thereon, alleged to have been erroneously assessed and collected from the plaintiffs as taxes for the years 1954 and 1955. The assessment was based upon the taxpayers' deduction from their income taxes in 1954 and 1955 a loss which occurred in 1953 and carried forward as a net operating loss. The loss occurred by reason of the sale, under a mortgage foreclosure, of certain hospital and medical supplies and equipment which plaintiff Dr. Dyer had purchased in July, 1950. The case was tried to the Court without a jury on November 18, 1959.

The substantial facts are not greatly in dispute. The question to be determined is whether or not a loss sustained by foreclosure and sale of the hospital and medical equipment and supplies in 1953 constituted a net operating loss. There is a minor dispute as to whether or not the taxpayer, in assessing his loss, used a correct adjusted cost basis.

The statutes involved are Sections 122(a) and 122(d) (5) of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 122(a), (d) (5), which are as follows:

"§ 122 (As added by Sec. 211 of the Revenue Act of 1939, c. 247, 53 Stat. 862, and as amended by Sec. 105(e) (3) of the Revenue Act of 1942, c. 619, 56 Stat. 798.) Net operating loss deduction

"(a) Definition of net operating loss. As used in this section, the term 'net operating loss' means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d).

\* \* \* \* \* \*

"(d) Exceptions, additions, and limitations. The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows:

\* \* \* \* \* \*

"(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such

trade or business. For the purposes of this paragraph deductions and gross income shall be computed with the exceptions, additions, and limitations specified in pargraphs (1) to (4) of this subsection."

## Findings of Fact

Most of the salient facts have been stipulated, and from the stipulated facts and the testimony of the taxpayer the Court makes the following findings of fact:

1. On or about July 18, 1950, taxpayer, Dr. Sydney G. Dyer, executed a chattel mortgage in favor of the Reconstruction Finance Corporation. In the latter part of 1952, Reconstruction Finance Corporation instituted an action in the United States District Court for the Western District of Kentucky at Paducah to foreclose its lien upon the mortgaged property when Dr. Dyer defaulted in payment under the mortgage and note which accompanied it.

2. On January 30, 1953, a Special Commissioner appointed by the Court sold the mortgaged property to the Reconstruction Finance Corporation, pursuant to the order of the Court, for $8,600, which amount represented the highest bid received at the sale.

3. Taxpayer, Sydney G. Dyer and his wife, Zanna Dyer, timely filed a joint federal income tax return on a calendar year basis for the year 1953 with the District Director of Internal Revenue at Louisville, Kentucky. On this return taxpayer, Sydney G. Dyer, claimed the loss on the sale of said mortgaged property as a loss on the sale of a capital asset in the amount of $16,152.18, using an adjusted cost basis of $24,752.19. Taxpayer availed himself of the maximum $1,000 deduction on the loss against ordinary income for each of the years 1953, 1954, and 1955.

4. Taxpayers' returns showed adjusted gross incomes of $7,176.75, $3,624.78, and $9,112.25, respectively, for each of the years 1953, 1954, and 1955, upon which taxes were paid in the amount of $902.52, $173.00, and $915.05, respectively, for the years 1953, 1954, and 1955.

5. Upon audit, the Commissioner of Internal Revenue determined that the loss on the sale of the hospital equipment was an ordinary loss on depreciable property used in a trade or business and as such was deductible in full when it occurred in the taxable year 1953. On September 7, 1956, an overassessment of the entire tax was allowed for the year 1953 in the amount of $902.52 Accordingly, the capital loss carry-over deduction of $1,000 claimed by the taxpayers in each of the years 1954 and 1955 was disallowed and deficiency assessments were made on October 31, 1956, in the amount of $233.85 plus interest of $16.25 for the year 1954 and $220.01 plus interest of $6.67 for the year 1955.

6. April 7, 1958, the taxpayers filed claims for refund in the amount of $353 for the year 1954 and $1,135.06 for the year 1955 for the alleged reason that Dr. Dyer was entitled to an operating loss carry-over in the amount of $4,624.78 for the year 1954 and $4,350.65 for the year 1955.

7. The Commissioner had previously effected a reduction in the taxpayers' taxable income for the year of 1953 in the amount of $7,165.75, the total amount determined by the Commissioner to represent the deductible loss incurred by the taxpayers in the sale under the mortgage foreclosure.

8. From the testimony of the taxpayer, Dr. Dyer, it is apparent and the Court finds that he furnished and operated a clinic or a small hospital at Kuttawa, Kentucky, with the proceeds of the loan obtained from the Reconstruction Finance Corporation executed July 18, 1950. The note gave to Reconstruction Finance Corporation a lien on all of the equipment and supplies then owned or thereafter acquired by Dr. Dyer, the net cost of which to the taxpayer was $34,089.03. He claimed and was allowed depreciation of $9,336.85, so that the adjusted tax basis, that is, the adjusted cost basis of the mortgaged property was $24,752.10. At the foreclosure sale the

property brought $8,600.00, leaving a loss resulting from the sale of $16,152.-10.

## Conclusions of Law

This Court has jurisdiction of the parties and the subject matter. Title 28, Section 1346(a) (1), United States Code.

The plaintiffs lean heavily on the case of Goble v. Commissioner, 23 T.C. 593. In that case the taxpayer was engaged in a farming and livestock enterprise. Part of the stipulated facts was that the purchase, trade, and sale of farm machinery was incidental to the operation of the farming enterprise, though the taxpayer was not engaged in the business of buying or selling new, used, or salvaged farm equipment. During the year 1949, the taxpayer had sold a boar and certain farm machinery which she considered no longer useful in her operation. She claimed an operational loss resulting from the sale. The Tax Court held that the loss sustained in the sale of the animal and the farm machinery was attributable to the operation of a business regularly carried on within the meaning of Section 122(d) (5). The Commissioner contended that the loss from the sale of the assets did not qualify as a net operating loss because the taxpayer was not engaged in the business of buying, selling, trading, or otherwise dealing in farm machinery or livestock. The Tax Court held that the continuation of the taxpayer in the business of farming and livestock raising after the sales in question was a material factor and that the sales involved, not having substantially reduced the scope of the business or materially changed its nature or the manner in which it was conducted, qualified the loss as attributable to the operation of the business regularly carried on within the meaning of the pertinent statute.

The holding in the Goble case, as well as the reasoning of the Tax Court, is convincing. Referring to the Commissioner's contention, the Court said:

"If this viewpoint is held to be controlling, a loss sustained on a sale of assets consistently used in a taxpayer's trade or business could never become a part of a net operating loss which might be carried back or forward, even though it had been the practice of the business to purchase and sell such assets as the requirements of business dictated, unless such assets likewise were commodities the sale of which was a primary activity of such business."

The Court further said:

"It is our view that the meaning of the words 'attributable to the operation of a trade or business' is that the losses which are proximately related to the conduct or carrying on of a trade or business in the ordinary course (as distinguished, for example, from a total or partial liquidation) are properly includible in computing a net operating loss for the purpose of carry-back or carry-forward."

The loss in the instant case did result from a partial liquidation of the taxpayer's business assets. The plaintiffs lay great stress upon the fact that the Commissioner subsequently acquiesced in the decision in the Goble case.

Plaintiffs further rely upon Overly et al. v. Commissioner, 15 T.C.M. 1044; Cluck et ux. v. Commissioner, 29 T.C. 7; Corey et ux. v. Commissioner, 29 T.C. 360, and Ford et ux. v. Commissioner, 31 T.C. 119.

The Corey case, supra, cited by the taxpayers is, as this Court construes it, authority for the Commissioner. There the Tax Court said:

"What is required (as a test under Section 122 for an operating loss) is evidence that the loss or expense, which is an allowable deduction, be sustained as an incident to the ordinary and normal course of a trade or business regularly carried on by the taxpayer." (Parenthetical expression added.)

It was held that the sale or other disposition of the physical assets of a business is the equivalent of the liquidation of that business and, therefore, the exact

antithesis of the normal operation of a business regularly carried on. Because the loss in the Corey case was an isolated transaction incident to the total liquidation of the business, it was disallowed under the rule that the sale or other disposition of all or a substantial part of the income producing assets of a business constitutes an isolated transaction not incident to the ordinary and normal course of the business regularly carried on by the taxpayer. The other authorities relied upon by the taxpayers here are the same in effect as the Corey case.

Denying the contention of the taxpayers that the loss involved in the case of Ford et ux. v. Commissioner, supra, qualified as an operating loss which might be carried forward or back, the Tax Court held that to be exempt from the application of Section 122(d) (5) a loss must be not merely incident to prudent management but incurred in the normal day to day operation of the business.

The case of Lazier v. United States, 8 Cir., 170 F.2d 521, 9 A.L.R.2d 324, is an exhaustive discussion and analysis of the provisions of the statutes involved in the case at bar. The Court approved the holding of the trial court that a net operating loss to be available for carryover or carry-back purposes must be a loss sustained in the ordinary and normal course of the business regularly carried on by the taxpayer, and that a loss resulting from an isolated transaction, such as a sale of assets necessarily used as incident to an operating business, is not to be considered within the statutory section allowing net operating loss carryover or carry-back because such sales do not constitute a transaction incurred in the normal and ordinary course of the business regularly carried on. It was in the Lazier case that Judge Sanborn interpreted the statutes here involved as not being concerned with losses attributable to the total or partial liquidation of physical property used in the conduct of the business. This is the rule laid down by Merten, The Law of Federal Income Taxation, Vol. 5, Para. 29.05.

This Court has reluctantly concluded that the loss sustained by Dr. Dyer, though allowable and already allowed by the Commissioner as a deductible loss in the year 1953, is disqualified by Section 122(d) (5) from constituting a net operating loss which can be carried back or forward, because the loss here incurred was an occasional or isolated loss resulting from a liquidation or partial liquidation of the physical assets used in connection with the practice of medicine by Dr. Dyer. Therefore, there is being entered this day a judgment dismissing the complaint and awarding to the United States the taxable cost of this action.