**Mari Jane Faris FOSTER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 12155-1.**

United States District Court
W. D. Missouri, W. D.

Jan. 15, 1963.

Harry H. Ellis, Kansas City, Mo., for plaintiff.

Robert W. Ryan, Jr., Washington, D. C., Calvin K. Hamilton, Asst. U. S. Dist. Atty., Kansas City, Mo., for defendant.

JOHN W. OLIVER, District Judge.

This is an action for refund of income taxes. In compliance with our pre-trial orders, all facts were stipulated. The net operating loss carryback and carryover provisions of the Internal Revenue Code of 1939 are involved concerning the years, 1946, 1948 and 1949 for a loss suffered in 1947.

The stipulation of parties establishes that in the latter part of 1943 Dr. Faris became interested in a certain mining property located in Marion County, Arkansas. That property was known to contain zinc deposits and possibly lead, sulphur, and other minerals. Dr. Faris first organized a partnership with three other persons, in which he had an 80% interest, to develop and, hopefully, to

operate the mine. The partnership lasted until September 7, 1946. The partnership income tax returns reported that no income had been received during the life of the partnership and that all expenditures were for plant construction, development and extraction of some ore. From 1943 through part of 1947 both before, after and during the partnership, Dr. Faris personally spent $81,727 for various purposes in connection with the development of the mine. $1780.10 worth of ore was actually sold in 1946. No ore was sold in any other year. The mill and equipment were eventually sold for salvage in 1947 for $3,826.47; thus reducing Dr. Faris' total net expenditures to $79,947.60. One Sam Bunn, identified as an investor, paid Dr. Faris $2,500 on September 28, 1943. Deduction of that $2,500 reduced Dr. Faris' claimed loss to $76,121.11.

The stipulation also reflects Dr. Faris' unhappy experience with the mine after the termination of the partnership on September 7, 1946. Sometime after the death of the partnership and after the Government's subsidy for zinc was terminated in 1946, Dr. Faris employed an attorney to organize a corporation. Articles of incorporation for the "Strategic Minerals Production Company" were filed in December 1946. A certificate of authority to sell stock was issued on January 15, 1947, but that was the extent of corporate activity. In his claim, the taxpayer conceded that he "was unable to find anyone who would be interested in assisting in the financing". Accordingly, on October 18, 1947, an agreement and consent that the corporation be dissolved was filed with the Secretary of State of Arkansas.[1]

Early in 1947, a negligence action for personal injuries was filed against Dr. Faris in the Circuit Court of Marion County, Arkansas, by one B. H. Cowart. All of the milling equipment was attached in that case. On August 11, 1947, the case was settled. Under the terms of the settlement the equipment was to be sold and the sale price divided, two-thirds to Cowart, one-third to Dr. Faris. The property was sold. Cowart received $1,101.35; Dr. Faris, $326.49. On October 20, 1947, two days after the corporate dissolution papers were filed, Dr. Faris quitclaimed all of his mineral interests to the fee owner and, as stated somewhat poignantly in the stipulation "Dr. Faris abandoned further attempts to develop the property".

In each of the separate claims for refund, the taxpayer stated:

"Taxpayer was in the mining business during the years 1943 to 1947 inclusive. The loss sustained therefrom in 1947 when the operations and properties *were wholly abandoned* was a loss resulting from business operations and is subject to carry back and carry over. * * *

"During the latter months of 1943 taxpayer (L. E. Faris) began the development of a zinc mining project in Marion County, Arkansas. * * On Feb. 26, 1944 a down payment of $500.00 was made on the purchase for $6,000.00 of 160 acres in Marion County, Arkansas, whereon mining operations were to be conducted and a mill constructed. * * *

"Operation of the mill commenced during the latter year (referring to 1946) and the first shipment of ore was made during July, 1946. Proceeds from the sale of ore, including government premiums, aggregated $1,780.10, the last shipment being received by the purchaser on October 28, 1946. The price of zinc began falling in the latter part of

1. In a Memorandum Decision filed September 29, 1955, the Tax Court of the United States (Estate of L. E. Faris, Deceased, Mari Jane Faris, Executrix v. Commissioner, T. C. Memo, 1955–268), held that the corporation never took title to any property and never engaged in a business to the extent that it should be recognized as a taxable entity. It further held that the $76,121.11 loss involved in this case was deductible for 1947 by Dr. Faris personally as an ordinary business loss.

1946 and taxpayer was of the opinion that to make the business profitable additional equipment would have to be installed to permit a greater volume of production. Taxpayer therefore shut down operation of the mill during November, 1946. Unsuccessful attempts were made to obtain financial assistance. Protection of the properties was maintained until August, 1947. The land was deeded back to the seller and the business *completely abandoned* in 1947. * * * From the beginning *to the abandonment* thereof taxpayer estimates that he devoted about one-half of his working time to the mining business." (Emphasis ours)

We have emphasized the words "abandoned" and "abandonment" as stated in the claims as originally filed because in this Court plaintiff is critical of the Government's statement that "the question presented" is: "Was the loss derived from the abandonment of a mining venture and the subsequent sale of the mine assets attributable to the operation of a trade or business regularly carried on by taxpayer's husband so as to be subject to the net operating loss carryback and carryover provisions of the Internal Revenue Code of 1939?" [2]

Plaintiff argues that "the loss involved is not an abandonment loss". The thrust of plaintiff's argument is that plaintiff's loss was an "obsolescence loss". On the law, plaintiff argues that "obsolescence of a business asset is an operating expense for which a deduction is allowed, and which may give rise to a net operating loss carryback and carryover". And, on the facts, plaintiff argues that "the withdrawal of the subsidy paid by the Federal Government for the production of zinc precipitated a period of sharply increased obsolescence, for this mine and

mill which terminated about October 20, 1947, upon petitioner's abandonment of the mine and mill".

There is no factual data to support the idea that had the Government subsidies continued, the mine could have been profitably operated. But, in an effort to bring this case within what plaintiff contends is the rule of V. Loewers Gambrinus Brewery Co. v. Anderson, 282 U.S. 638, 51 S.Ct. 260, 75 L.Ed. 588 (1931), and Burnet, Commissioner v. Niagara Falls Brewing Co., 282 U.S. 648, 51 S.Ct. 262, 75 L.Ed. 594 (1931), it is argued that "the similarity of the pattern of facts" in those cases and in this case "is arresting". Plaintiff argues that in both "the happening of an external force beyond the control of the taxpayer caused the taxpayer's tangible asset" to become obsolescent. Plaintiff contends that the lawsuit, the consequent salvage sale, and Dr. Faris' forced abandonment of the mining venture, was not "the occasion or cause of the loss". Plaintiff insists that "the loss had already taken place"; that the Government "has confused cause and effect"; and attempts to argue that "the loss by obsolescence came first", and that "in fact, the obsolescence was the cause of the liquidation". There are no facts in the record upon which plaintiff's legal arguments can be said to rest.

Section 122(d) (5) of the Internal Revenue Code of 1939 does not permit a "net operating loss" deduction unless it is "attributable to the operation of a trade or business regularly carried on by the taxpayer". Lazier v. United States, 8th Cir. 1948, 170 F.2d 521, 526, 9 A.L.R. 2d 324, holds that when Congress enacted that section of the 1939 Act it "was concerned with 'net operating losses' sustained in the normal operation of a business regularly carried on by a taxpayer".

---

2. In her brief in this Court, plaintiff stated "the question presented" in the following language: "Was the loss of $76,121.11 sustained during the year 1947 a net operating loss subject to carryback to the year 1946 and carryover to the years 1948 and 1949, under Section 23(s), and Section 122, I.R.C.1939"? Plaintiff's effort to avoid the taxpayer's admitted "abandonment" as stated in his original claims is obvious.

More importantly, that case holds that Congress "was not concerned with losses attributable to the total or partial liquidation of the physical properties used in the conduct of the business".

On the facts, we have great difficulty in even finding that "mining" was a "business regularly carried on by a taxpayer".[3] But even if it be assumed that mining, as distinguished from an effort to promote a mine, was a "business regularly carried on by a taxpayer", we must, on the facts, reject plaintiff's argument that "enough facts are in evidence to warrant the Court in drawing the inference that the loss sustained by the plaintiff arose from obsolescence of the mining business, commencing November 29, 1946 (the date of the taxpayer's last sale of $529.02 of ore to the United States Government), and terminating with the property becoming obsolete October 20, 1947". The virulence of Dr. Faris' mining fever was so great that the termination of the zinc subsidy payments in 1946 did not at all deter him from the pursuit of his dream.[4] After his partners left him in September of 1946, Dr. Faris was obviously convinced, in the language of the stipulation, that only "more capital was needed for the property under development". Accordingly, again in the language of the stipulation, "Dr. Faris decided to form a corporation with a view toward raising money through the sale of stock". And the stipulation also shows that Dr. Faris continued his efforts to get ore out of the ground during 1947 until the attachment under the lawsuit made further efforts physically impossible.

We find as a fact that Dr. Faris' eventual abandonment of his mining venture and the consequent loss of $76,121.11 was not attributable to the operation of a trade or business regularly carried on by him. We further find that the $76,121.11 loss resulted from the forced sale occasioned by the settlement of the Cowart lawsuit and that there are no facts in this record that can be said to reasonably support plaintiff's obsolescence argument. And we finally find that the $76,121.11 loss resulted from the total liquidation of all of the taxpayer's property that was required under the terms of the settlement agreement.

The principles that controlled Lazier v. United States, supra, control this case.[5] An application of those principles to the facts as we have found them require that plaintiff's complaint should be, and it is hereby dismissed with prejudice.

IT IS SO ORDERED.

3. How can it be found that a "mining business" was being "regularly carried on by a taxpayer" when the undisputed facts show that during the entire period from 1943 to 1947 in which the taxpayer claimed he was "in the mining business" he made only six sales of ore totaling $1,780.10 between July and November of 1946? But see 379 Madison Avenue, Inc. v. Commissioner of Internal Revenue, 2 Cir. 1932, 60 F.2d 68, 69, and cases there cited.

4. For an account of pursuits of not dissimilar dreams see the article in the current issue of American Heritage, Vol. XIV, No. 1, page 7, entitled "Gold!", which describes what happened to all kinds of people following James Marshall's discovery of gold at John Sutter's sawmill on January 24, 1846.

5. Lazier is probably the leading case in the country on the question involved in this case. It is annotated in 9 A.L.R.2d 324, 330 and has been followed and applied to various factual situations other than farming and the principles there announced are not in any way confined to such a factual situation. See and compare Pettit v. Commissioner of Internal Revenue, 5th Cir. 1949, 175 F.2d 195; Baruch v. Commissioner of Internal Revenue, 2nd Cir., 1949, 178 F.2d 402; Puente v. Commissioner of Internal Revenue, 9th Cir. 1952, 199 F.2d 940; Bratton v. United States, 6th Cir. 1956, 230 F.2d 952; Appleby v. United States, 1953, 127 Ct.Cl. 91, 116 F.Supp. 410, 414; and Dyer v. United States, District Court Kentucky, 1960, 185 F.Supp. 880, 884.