**GUGGENHEIMER**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 67, Docket 22734.

United States Court of Appeals, Second Circuit.

Argued Oct. 13, 1953.

Decided Jan. 6, 1954.

Edgar J. Goodrich, Washington, D. C., Edward First, New York City, Lipman Redman, Washington, D. C., and Marvin Ross, New York City, for petitioner.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Carolyn R. Just, Spec. Assts. to the Atty. Gen., for respondent.

Before L. HAND, SWAN and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This appeal involves income tax deficiencies for the years 1943 and 1944. The taxpayers were husband and wife and they filed joint income tax returns. For convenience the husband will hereafter be referred to as the taxpayer.[1]

1. During pendency of the appeal Mr. Guggenheimer died. His executrix has been substituted as a party.

The principal question presented is whether a loss incurred in 1945 upon the sale of improved real estate is a net operating loss which can be carried back, pursuant to section 122(b) as limited by section 122(d) of the Code, 26 U.S.C.A. § 122, to reduce net income for the years 1944 and 1943. The Commissioner disallowed the carry-back and the Tax Court sustained his ruling. The relevant statutes are set out in the margin.[2]

The case was submitted to the Tax Court upon stipulated facts and the testimony of the taxpayer. There is no dispute as to the facts. The following summary will suffice: The taxpayer was an attorney at law and was engaged in active professional practice from 1899 on. He was also actively engaged in the business of buying and selling real estate, occasionally solely on his own account but usually in association with others. Prior to his father's death in 1907, he was associated with him. Thereafter he was associated with his mother until her death in 1927. Prior to her death he was also associated with Mr. William McCarthy and a Mr. Levine in purchasing old buildings, making such repairs as were necessary and selling them at a profit, and this association continued until 1939. Upon his mother's death, the taxpayer, his brother and his sister acquired, as devisees under her will in equal shares, title to several pieces of real estate in New York and New Jersey. They formed a partnership for the disposal by sale of the property so acquired, with the taxpayer serving, because of his experience in dealing in real estate, as the active member of the partnership. The last piece of the property of this partnership was disposed of by sale in 1949. Included in the devised property was 923 Fifth Avenue, New York City, which is the property involved in the case at bar. The taxpayer's mother occupied it as her residence until her death. The partnership contracted to sell it in 1929 for $325,000, but the purchaser defaulted and the partnership got back the property together with a forfeited deposit of $25,000. Under prevailing economic conditions efforts to sell it were unavailing for many years. The taxpayer regarded the property as less valuable than did his brother and sister. In order that he might have a free hand in selling it, in 1937 he bought out their interests at a price for the property of $225,000 less the existing mortgage of $140,000. At the same time he agreed with them that if he sold it for more than $200,000, he would pay each of them one-third of the excess. In other

---

2. 26 U.S.C.A. § 23. "Deductions from gross income. In computing net income there shall be allowed as deductions:

\* \* \*

"(s) Net operating loss deduction. For any taxable year beginning after December 31, 1939, the net operating loss deduction computed under section 122."

26 U.S.C.A. § 122. "Net operating loss deduction

"(a) Definition of net operating loss. As used in this section, the term 'net operating loss' means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d).

"(b) Amount of carry-back and carry-over.

"(1) Net operating loss carry-back. If for any taxable year beginning after December 31, 1941, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years, \* \* \*.

\* \* \* \* \*

"(d) Exceptions, additions, and limitations. The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows:

\* \* \* \* \*

"(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. For the purposes of this paragraph deductions and gross income shall be computed with the exceptions, additions, and limitations specified in paragraphs (1) to (4) of this subsection."

words, he had to sell it for more than $275,000 before he himself could make a profit. In 1945 he sold it for approximately $125,000. According to the stipulation of facts his loss on the sale was $95,628.98, unless his share of the $25,000 received by the partnership on the 1929 contract of sale, on which he had not paid an income tax, should be used to reduce the basis of the property; if it was so used his loss was $87,295.65.[3] At the time the taxpayer bought the interests of his brother and sister in 923 Fifth Avenue he was still engaged in the business of buying and selling real estate in association with Messrs. McCarthy and Levine. And he was still maintaining a real estate office, separate from his law office, which he visited once or twice each week and at which records of his real estate transactions were kept by an employee. This office was not given up until 1947. No purchases or sales of real estate were made between 1940 and 1944.

Upon the foregoing facts the Tax Court ruled that the loss "was not attributable to the operation of a trade or business regularly carried on by the taxpayer" and accordingly was subject to the limitations prescribed by section 122(d) (5). The opinion states, 18 T.C. 81, 83:

"This property was neither acquired nor held by the petitioner for sale in the ordinary course of his business of buying and selling real estate. All his dealings with respect to it were separate, apart and isolated from his business venture with respect to the purchase and sale of real estate."

In its supplemental memorandum opinion the court adhered to its former holding but amplified its discussion. It stated that the partnership between the taxpayer and his brother and sister was formed for the purpose "of liquidating the estate received under their mother's will as expeditiously as sales could be made at acceptable prices"; that such partnership was not formed for, nor did it engage in, "the business of acquiring and selling real property"; that when the taxpayer purchased from the partnership the property in question he "acquired no additional economic interest" but merely "the right to a free hand in selling it," and consequently his purchase "did not effect the segregation or withdrawal of such property from the partnership pool."

■ To be entitled to the deduction of a net operating loss sustained on the sale of a piece of real property the loss must be "attributable to the operation of a * * * business regularly carried on by the taxpayer" of selling real estate.[4] We agree with the taxpayer that it was not necessary for him to prove that he was actively engaged in such business in the year 1945 when the property in question was sold. If property is acquired in the operation of the business, the sale of it is part of such operation, although it be the last transaction and made for the very purpose of closing out the business.[5] Although it is true that the partnership formed by the taxpayer with his brother and sister did not engage in the business of *acquiring and* selling real property, it did engage in the business of selling the several pieces of property acquired by the partners under their mother's will. It is not apparent to us why the sale of property acquired by a taxpayer by devise may not be "the operation of a trade or business regularly carried on" by him. For example, if a taxpayer acquires by devise or inheritance a vacant tract of land which he causes to be subdivided for the purpose of selling individual lots, we think that he may regularly carry on the business of selling the lots, and the fact that his ultimate purpose is

3. Since the Tax Court allowed no net operating loss carry-back, it did not find it necessary to decide the amount of the taxpayer's loss on the sale in 1945.

4. Sic v. Commissioner, 8 Cir., 177 F.2d 469, certiorari denied 339 U.S. 913, 70 S. Ct. 572, 94 L.Ed. 1339; Baruch v. Commissioner, 2 Cir., 178 F.2d 402.

5. Walter G. Morley, 8 T.C. 904.

to liquidate his devise or inheritance is irrelevant.[6] If the tract is devised to two or more persons they may form a partnership to do the same thing, and we should suppose that the carry-back and carry-over provisions of section 122 would apply. By section 189 of Title 26, the net operating loss deduction of a partnership may be availed of by the partners in their individual tax returns.[7] Hence if the Tax Court is correct in holding that 923 Fifth Avenue was never withdrawn from the partnership pool it should have determined whether the partnership was regularly carrying on the business of selling the various pieces of real estate received by the partners from their mother's estate. As to this the Tax Court made no finding.

█ But we are not convinced that the taxpayer's purchase in 1937 of the interests of his brother and sister did not effect a withdrawal of 923 Fifth Avenue from the partnership pool. In our opinion he acquired more than merely the right to sell without consulting his brother and sister as to the sale price. He acquired full ownership subject only to his contractual duty to pay his brother and sister the sums promised them if he sold. It is by no means clear that he was under any contractual duty to them ever to sell the property. Even if their contingent contractual right to share in his profits if he sold for more than $275,000 be deemed to have created a partnership relationship it was a different partnership from that of the partnership pool. A partnership formed to sell a single piece of real estate does not operate a regular business of selling real property.

█ The taxpayer urges that he was in 1937 engaged in selling real estate in association with Messrs. McCarthy and Levine and simultaneously was conducting the business of selling the devised property for himself and his brother and sister; and argues that his purchase of the Fifth Avenue property brought it within "his personal real estate ventures." The Tax Court's opinion states that the taxpayer's dealings with respect to the Fifth Avenue property were separate and apart from his buying and selling operations with the association. "It was not purchased or ever managed by the association." Nor was it, for reasons already discussed, part of the partnership pool after the taxpayer's purchase in 1937. Obviously Messrs. McCarthy and Levine had no interest in the Fifth Avenue property. Consequently we think the Tax Court's finding that all of his dealings with respect to it were separate, apart and isolated from his business venture with respect to the purchase and sale of real estate cannot be held to be clearly erroneous. Accordingly, its denial of a carry-back deduction for the taxable years in suit must be affirmed. It is so ordered.

---

6. See Ehrman v. Commissioner, 9 Cir., 120 F.2d 607, 610; N. Stuart Campbell, 5 T.C. 272, 274.

7. 26 U.S.C.A. § 189. "Net operating losses "The benefit of the deduction for net operating losses allowed by section 23(s) shall not be allowed to a partnership but shall be allowed to the members of the partnership under regulations prescribed by the Commissioner with the approval of the Secretary."