T. E. PENTON, Appellant,
v.
UNITED STATES of America,
Appellee.

No. 13408.

United States Court of Appeals
Sixth Circuit.

Oct. 6, 1958.

Harry Berke, Chattanooga, Tenn., for appellant.

Charles B. E. Freeman, Dept. of Justice, Washington, D. C., Charles K. Rice, Lee A. Jackson and I. Henry Kutz, Washington, D. C., John C. Crawford, Jr., Knoxville, Tenn., C. C. Ridenour, Chattanooga, Tenn., on the brief, for appellee.

Before SIMONS, Chief Judge, and McALLISTER and MILLER, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

Appellant, T. E. Penton, filed this action in the District Court to recover income taxes paid for the year 1945, which he claims was an overpayment by reason of a net operating loss carry-back from the year 1947. The action was dismissed, from which ruling this appeal was taken.

The action was submitted to the Court on the following stipulation of facts. Taxpayer purchased a retail liquor store in Chattanooga, Tennessee, on or about May 17, 1943, which he operated under the required licenses until December 31, 1946. Persons engaged in the retail liquor business in Tennessee were requir-

ed to have state, county and city retail liquor dealer's licenses, which were normally issued in the fall of the year to license a dealer to engage in the business for the following year. Taxpayer made application in the fall of 1946 for licenses authorizing him to engage in the retail liquor business for the year 1947, but because of his inability to obtain from the office of the City Commission the necessary certificate of good moral character he did not receive licenses for the year 1947.

During the latter part of 1946 and early part of 1947 taxpayer employed the services of an attorney and numerous unsuccessful efforts were made to obtain the necessary licenses, including the making of several trips to Nashville, Tennessee. Taxpayer applied for and received certificates of good moral character and the necessary retail liquor dealer's licenses for the year 1948 and calendar years subsequent thereto, and operated his business under them.

During the year 1947 taxpayer maintained an inventory in his liquor store and carried insurance thereon. He also paid rent, and the charges for telephone and other utilities on the premises. He retained the services of a bookkeeper to keep a detailed account of the expenses for the year 1947. During 1947 taxpayer returned quantities of whiskey to wholesale houses from which the whiskey was purchased and secured a refund on said whiskey, suffering some loss in the exchange of this stock of whiskey. The balance of the whiskey was kept insured and not removed from the premises. Taxpayer paid a guard the regular charges for patrolling the area, watching for burglaries, fires and for the safety of the premises while it was closed.

Taxpayer filed his individual income tax return for the calendar year 1947, reporting therein no gross income and a net operating loss in the amount of $4,975.46. This included a net loss on inventory of $461.73, rent in the amount of $2,300.00, bookkeeping expenses of $590.00, telephone expense $135.70, lights and water in the amount of $100.27, and other miscellaneous expenses. Taxpayer had previously filed his income tax return for the calendar year 1945 and paid the tax in the amount of $8,091.83. On August 23, 1950, taxayer filed a claim for refund of income taxes for the calendar year 1945 claiming that he was entitled to carry back to the year 1945 the net operating loss claimed in his return for the calendar year 1947. The Commissioner rejected the claim and this action followed.

Section 23(s), Internal Revenue Code, 1939 Edition, 26 U.S.C.A. § 23(s), allows a deduction for a net operating loss, computed under Section 122, 26 U.S.C.A. § 122. Section 122(b) (1), as amended in 1942, provides that if for any taxable year beginning after December 31, 1941, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years, with certain exceptions. In defining the term "net operating loss" a limitation is imposed by Section 122(d) (5) to the effect that unless the loss is attributable "to the operation of a trade or business regularly carried on by the taxpayer" it is not a net operating loss which will qualify as a carry-back deduction under Section 122(b) (1). Accordingly, taxpayer's claim in this action of a net operating loss carry-back from the year 1947 to the year 1945 depends upon whether the alleged net loss was attribtual to the operation of a trade or business regularly carried on by him. A nonbusiness loss sustained in 1947, as distinguished from a loss in a trade or business regularly carried on by him, could not be carried back to the year 1945. Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389; Stephenson v. Commissioner, 6 Cir., 101 F.2d 33, certiorari denied 307 U.S. 647, 59 S.Ct. 1046, 83 L.Ed. 1527.

The District Judge held that taxpayer was not engaged in business during the year 1947, that he was maintaining his store and paying rent and other expenses solely for the purpose of anticipating and receiving the necessary licenses for the succeeding years, that his failure to

have a license created the presumption that he did not engage in business in that year, which would have been an illegal operation on his part, and that, under the circumstances, in 1947 he was not operating a business regularly carried on but was making an investment to secure the permit and licenses to operate in the future. McDonald v. Commissioner, 323 U.S. 57, 65 S.Ct. 96, 89 L.Ed. 68.

On this appeal the Government argues that in order for a loss to be attributable to the operation of a trade or business within the meaning of Section 122(d) (5) the loss must be incurred in the normal day-to-day operation of the enterprise, that since taxpayer admittedly did not make any sales in 1947, the usual activity of the business was absent, and that merely the place in which the business was formerly conducted was being maintained, with the conclusion that taxpayer did not regularly operate his retail liquor business during 1947.

A number of cases are cited in support of its contention. Bratton v. United States (W.D.Tenn.), decided March 31, 1955, affirmed 6 Cir., 230 F.2d 952; Appleby v. United States, Ct.Cl., 116 F. Supp. 410; Greenfield v. United States, Ct.Cl., 116 F.Supp. 581; Lazier v. United States, 8 Cir., 170 F.2d 521; Pettit v. Commissioner, 5 Cir., 175 F.2d 195; Sic v. Commissioner, 8 Cir., 177 F.2d 469. However, those cases seem inapplicable to the present case, in that they involved losses resulting from the sale by the taxpayer of non-inventory assets used in his business but not sold in the ordinary course thereof, with the Court holding that because the buying and selling of such assets was not the business of the taxpayer the resulting loss was not an operating loss in the taxpayer's business. The transactions in the present case which caused the loss to taxpayer were transactions normally and usually carried on by a person engaged in the retail liquor business.

█ In determining whether the loss occurred in the operation of a trade or business regularly carried on by the taxpayer important considerations are (1) the continuity of the business, (2) the amount of time and energy devoted thereto by the taxpayer, and (3) whether the taxpayer is engaged in the business for the purpose of earning a livelihood or merely as an avocation. Mertens, Law of Federal Income Taxation, Vol. 5, Sec. 29.06. It is not necessary that the taxpayer be engaged in only one business. Marsch v. Commissioner, 7 Cir., 110 F. 2d 423, 424–425; Tatt v. Commissioner, 5 Cir., 166 F.2d 697. Under these tests the taxpayer qualified for the carry-back deduction unless the necessary continuity of his business was absent because of his inability to obtain a liquor dealer's license for the year 1947. Considering this aspect of the case, appellant argues that the business was not closed out or liquidated, there was every intention on the part of the taxpayer to continue in business, he resumed full operation of his business after the year 1947, and to the extent that the full operation of the business was affected by the failure to receive a license, such limited operation of the business was involuntary on his part. It is well known that there were businesses which as a practical matter operated on a very restricted scale at a loss during the general business depression of the nineteen thirties or during World War II, when sources of supply of raw materials were cut off by world conditions. Yet, legally those businesses continued in operation during such periods of inactivity. Walter G. Morley, 8 T.C. 904, 915–916. Keeping in mind that the statute, being a relief measure, should be construed liberally in favor of the taxpayer, Burnet v. Marston, 61 App.D.C., 91, 57 F.2d 611, 612, we think that taxpayer in the present case falls more within such a classification than within the classification of a businessman who has discontinued the operation of a business regularly carried on by him.

█ There are additional factors supporting taxpayer's claim. Although the loss in question was taken in 1947 it was attributable to a business which was regularly carried on by him in the years prior thereto. The whiskey which was

returned to wholesale houses in 1947 had been acquired in the regular operation of the business prior thereto. The lease of the premises, insurance, and the employment of personnel were continuing expenses from 1946. It is not necessary under the statute that the net operating loss carry-back be paid in the year in which the business was in operation provided that the loss so taken in a later year was attributable to the operation of a business regularly carried on by the taxpayer in a prior year. Burnet v. Marston, supra, 61 App.D.C. 91, 57 F.2d 611, 612; Guggenheimer v. Commissioner, 2 Cir., 209 F.2d 362, 364; Walter G. Morley, supra, 8 T.C. 904, 917; Adolf Schwarcz, 24 T.C. 733, 740. See: Duff v. Commissioner, 23 B.T.A. 1342, 1343.

The judgment of the District Court is reversed, and the case remanded to the District Court for further proceedings consistent with the views expressed herein.

SIMONS, Chief Judge (dissenting).

I am unable to concur in the views of my colleagues because I find myself precluded from doing so by McDonald v. Commissioner, 323 U.S. 57, 65 S.Ct. 96, 89 L.Ed. 68. The principle there applied is in my judgment applicable here upon a not too remote factual analogy. In McDonald an incumbent judge, appointed to fill an unexpired term, incurred substantial expenses in seeking election as judge for the ensuing term. The court held that his outlays were not expenses incurred in being a judge during the tax year but in trying to continue as judge for the next term. Here, the appellant who had been engaged in the business of a retail liquor dealer in preceding years was unable legally to operate his business in 1947 because of his inability to obtain from the City Commission a license to do so. He incurred expenses in the tax year in the hope, or even the expectation, of receiving a license for 1948 and succeeding years. His losses in 1947 were not, however, attributable to the operation of "a trade or business regularly carried on," a prerequisite for the carry back of his

1947 loss to previous years. He was not in 1947 operating as a liquor dealer. His business was suspended for that year, and there was no assurance that he would obtain a license in 1948, even though he preserved his inventory and facilities looking to that end. He was in no better status than the judge in McDonald. Undoubtedly, the judge there had a reasonable expectation of being elected because of his advantage in being an incumbent, but it was still necessary for him to submit to the hazard of a popular election. Likewise, the appellant had no assurance that the City Commission would renew his license in 1948, no matter what his expectations. I think the judgment below should be affirmed.