Walter W. Hendrix, Jr., and Juanita S. Hendrix v. Commissioner.
Hendrix v. Commissioner
Docket No. 4485-69 SC.
United States Tax Court
T.C. Memo 1971-49; 1971 Tax Ct. Memo LEXIS 284; 30 T.C.M. (CCH) 221; T.C.M. (RIA) 71049; March 23, 1971, Filed. Max D. Ballinger, Brown Bldg., Greensboro, N.C. Frank D. Armstrong, Jr., for the respondent. JOHNSTON Memorandum Findings of Fact and Opinion JOHNSTON, Commissioner: The respondent determined a deficiency of $749.28 in petitioners income tax for the taxable year 1967. In the determination of the deficiency Commissioner disallowed a deduction for expenses incurred by petitioners during a trip to Europe in the amount of $4,505 and a deduction in the amount of $612.47 in excess of the amount allowed by the Commissioner in connection with the maintenance of a business office at home. The issues for decision are whether the amounts *285 deducted by the petitioners are allowable under sections 162 and 274 of the Internal Revenue Code of 1954. [1]
Some of the facts have been stipulated and those facts are so found. The petitioners resided in Greensboro, North Carolina on the date of filing their petition. In 1967 the husband petitioner who owned 8 apartments in Greensboro was in the business of renting apartments. Mrs. Hendrix had been employed as a first grade school teacher since 1958. From 1958 to August 15, 1966, Walter W. Hendrix, Jr., hereinafter referred to as Walter, was employed as a salesman of ethical pharmaceuticals and certain over-the-counter items by the Roerig Division of the Charles F. Pfizer Company under a salary plus a bonus arrangement. Walter was discharged by Pfizer on August 15, 1966. At that time and subsequently, he expected to continue selling products to his Roerig customers. 222 Sometime in April 1967, after conclusion of protracted litigation arising out of circumstances connected with Walter's discharge, he began to investigate the possibilities of establishing his own business to exploit *286 his continuing relationships with drug stores. He decided not to engage in the sale of ethical drugs and over-the-counter drug items but he continued to explore the possibilities of selling home decorative items to drug stores. Walter was inexperienced in this line. He made some unsatisfactory preliminary efforts to obtain lines of home decorative items in the United States. On or about June 9, 1967, the petitioners, pursuant to arrangements made by them, began a 15,000 mile trip abroad which covered Ireland, Scotland, England, France, Spain, Portugal, Morocco, North Africa, Italy, Yugoslavia, Austria, Switzerland, Germany, Norway, Sweden, Denmark, Belgium, Luxemburg, and Holland. Mrs. Hendrix departed Europe for home on August 22, 1967, and Walter remained in Europe until about August 31, 1967. During the course of this trip, the petitioners incurred living expenses of $3,005 for food, lodging and other personal necessities and $987.60 for air transportation. Walter testified that he kept a record of his trip on pieces of note paper or on the backs of envelopes or anything that he could get to write on. Sometime after he returned, when some issue was made of his tax by the Internal *287 Revenue Service, he testified he took the separate pieces of paper and prepared a written statement from them for submission to the Internal Revenue Service. After the written statement was prepared he threw away the original documents. Mrs. Hendrix went along on the trip because her husband wanted her opinion on the home decorative items to be selected. She returned 8 or 9 days before Walter to return to her teaching position. It has not been adequately shown that her presence had a bona fide business purpose. Although Walter testified that the purpose of his trip was business, it does not appear that business was conducted for a major part of the time petitioners were abroad. The Court is far from satisfied that the primary purpose of the entire trip was business. While petitioners stress the business contacts made, their trip, taken at the height of the tourist season, covered those parts of Europe of most interest to tourists because of the scenic beauty or other personal reasons. There is oral testimony of some business contacts. Walter testified that most manufacturers of products of interest to him were closed for vacation. He also testified that some business discussions *288 related to the possibilities of importing antiques for sale at home. This would have been a new business for Walter. There is no documentation of business purposes of these discussions which meets the requirements of section 274 of the Internal Revenue Code corroborating his testimony except for the Frankfurt Fair. Mrs. Hendrix returned to Greensboro before the opening of the Frankfurt Fair. Mrs. Hendrix' testimony in regard to business conducted was general and lacking in specificity. It is not deemed sufficient corroboration of Walter's testimony for the purpose of section 274, Arthur Hughes, T.C. Memo. 1970-339. There is documentation which corroborates Walter's testimony that he did spend three days at the Frankfurt Fair in Germany. The articles displayed at that Fair were generally of the nature he wished to import for sale. Walter spent one day in New York upon his return obtaining information about manufacturers of products of interest to him. Walter's reason for not actively engaging in the sale of home decorative items upon his return from Europe in early September 1967 was because he then began negotiations to construct 11 apartment units *289 on property owned by him. After financing was obtained, at a date not shown in the record, he devoted all of his time to the construction of the apartments which were not completed for at least 18 months. In 1967, Walter, at times not shown by the record, entertained various guests at his house including druggists with whom he dealt while employed by Pfizer. He also held a Christmas party to which he invited "a great number of his accounts" plus some of their personal friends. There is no evidence of who attended these gatherings, how many were there purely for business reasons and how many were there as social guests, or the amounts spent for such entertainment. Walter made no purchases of European wares in 1967 except for certain samples purchased from a concern in West Germany for $27.42. He maintained no inventory other than those samples and he made no sales of home decorative items in 1967. He reported no income from the sales of home decorative items in the taxable year. More than 25 percent of Walter's total travel time away from the United States 223 was attributable to nonbusiness activities. Walter's travel time spent in Frankfurt, three days, was attributable *290 to a business activity. Walter could have flown directly to Frankfurt, Germany in one day. The time for the return trip would have been the same. The principal issue with respect to the deduction for expenses incurred by petitioners during their European trip turns on whether Walter, a salesman with extensive contacts with drug stores, continued in business as a salesman during the calendar year 1967, or, whether during that year he was engaged in looking for a new business which might prove productive of income in the future. In Morton Frank, 20 T.C. 511 (1953), the taxpayer husband, who was released from the Navy in 1945 and who had prior extensive experience as a newspaper employee, and his wife, who was a lawyer, traveled to various places in the United States to investigate and, if possible, to buy a newspaper or radio station. Early in the taxable year Mr. Frank was employed by a newspaper in Phoenix. Thereafter the Franks continued their search and made several trips throughout the country. In November, they bought and commenced publishing a newspaper in Canton, Ohio. The Court held that the traveling expenses spent in searching for a newspaper business to purchase *291 could not be deducted. It stated that "the expenses of investigating and looking for a new business and trips preparatory to entering a business are not deductible as an ordinary and necessary business expense incurred in carrying on a trade or business." Other cases of the same purport can be found. However, in Harold Haft, 40 T.C. 2 (1963), the Court held that a costume jewelry salesman who severed his connections with his supplier in September 1957 and who in 1958 was endeavoring to obtain a new source of costume jewelry to sell should be allowed to deduct those expenses properly referable to his trade or business. It also held that the period of transition was a reasonable one since Mr. Haft was actively seeking a suitable connection commensurate with his status in the costume jewelry field. The Court held additionally that expenses proximately related to Mr. Haft's business, such as entertainment of buyers and gifts to buyers as well as telephone, postage, stationery and organization dues, were deductible in the taxable year 1958. It is believed that this case is controlled by Harold Haft. It is true, of course, that in Haft the Court disallowed the expenses of a *292 sojourn in Miami at the height of the winter season while Mr. Haft was investigating the possibilities of purchasing an interest in a jewelry business. Nevertheless, it cannot be said in light of the Haft case that the calendar year 1967 was not a reasonable period of transition. Cf. Furner v. Commissioner, 393 F. 2d 292 (C.A. 7, 1968) reversing Mary O. Furner, 47 T.C. 165 (1966); T.E. Penton v. United States, 259 F. 2d 536 (C.A. 6, 1958). Accordingly, we hold that Walter, who was actively seeking a supplier, did not cease to be a salesman in 1967 because he had no products to sell. However, we cannot, as was done in the Haft case, apply the Cohan rule to the determination of the expenditures incurred by Walter on the European trip. We believe that Walter's primary business purpose in going to Europe was to attend the Frankfurt Fair. However, he chose to reach it by a roundabout route which took him to much of the scenic portions of Europe visited by tourists in the summer season. Of the 83 days Walter spent in Europe we find that he spent 3 days in Frankfurt which could be attributed to a business purpose. The record does not show the cost of *293 a direct flight to Frankfurt. We, therefore, restrict our allowance for transportation to one half the cost of the airplane fare paid for Mr. and Mrs. Hendrix or $494. We also find on the basis of an allocation of stipulated costs that Walter incurred expenses in the amount of $18 per day for 3 days in attendance of the Frankfurt Fair for a total of $54. Walter also spent 1 day in New York upon his return from Germany. However, he has not established in the record, as required by section 274 of the Internal Revenue Code of 1954 and the regulations promulgated thereunder, the amount of any expenditures incurred in connection with his stay in New York City. Petitioners kept a record of their trip in an extremely haphazard manner. When questioned by the Internal Revenue Service they chose to destroy the original documents after having made transcription therefrom. It is basic to section 274, as shown by committee reports and the regulations, that the supporting records under that section of the Internal Revenue Code should be made at or near the time of the expenditure in order to substantiate the oral testimony of the taxpayer. Only where records are lost under *294 circumstances beyond the taxpayer's control, such as casualty, may 224 the taxpayer substantiate a deduction by reconstruction of his records. Such is not the case here. In 1967 petitioners lived in a house with 10 rooms consisting of living room, dining room, breakfast-kitchen area, den and 3 bedrooms and 2 baths and an entrance foyer, all on the first floor. There was a basement area of approximately the same area as the inside space upstairs. In addition there is an enclosed space underneath the porch which can be entered from the basement. During 1967 petitioners utilized part of the basement of their home to store supplies and equipment used in connection with the maintenance of their personal residence and maintenance of rental property which they owned. In 1967 there was a maintenance building connected with the buildings which were owned and rented out by petitioners. In the basement the petitioner had an office which he used in connection with typing letters and maintenance of records with respect to the apartments. Petitioner had a typewriter but no file cabinets in his office in 1967. The dimensions of his office in the basement were approximately 12 or 13 x 14 feet. *295 The floor plan of the house showed outside dimensions of 52 x 32 feet. Petitioner incurred certain expenses, electricity, gas, water, maintenance and insurance for his home in amounts which are undisputed. Also undisputed is the amount of depreciation allowable on the home if it were entirely devoted to business purposes. Petitioner claims 30% of these expenditures and of the total amount of depreciation computed as a business expense. The respondent contends he is entitled only to 10% of these amounts. We find that the petitioner is entitled to 15% of the expenses of electricity, gas, water, maintenance and insurance for his home as well as the allowable depreciation. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered under Rule 50. Footnotes
1. All code section references herein are to the Internal Revenue Code of 1954.↩